26377, 26397. HOKE *v.* WALRAVEN, administratrix; and
*vice versa.*

DECIDED DECEMBER 3, 1937.
ADHERED TO ON REHEARING, DECEMBER 20, 1937.

*Bryan, Middlebrooks & Carter, Hewlett & Dennis,* for plaintiff in error.

*George & John L. Westmoreland, Cliff E. Thomas, W. D. Smith,* contra.

STEPHENS, P. J. The petition of Oliff T. Walraven, filed in the court of ordinary on December 9, 1933, alleged that when he was sixteen years of age he had obtained a verdict for $30,000 against the Georgia Railway and Power Company; that on June 13, 1923, Mrs. W. D. Akin was appointed guardian of his property by the court of ordinary of Fulton County; that the petition for guardianship papers recited that he was entitled to considerable property, by reason of said verdict, in the sum of $10,000; that the guardian gave bond in the sum of $20,000, that the application for guardianship failed to show that he was entitled to $20,000 (after deducting counsel fees), and that the guardian's bond should have been $40,000 instead of $20,000; that the guardian received from the sheriff of Fulton County $10,000 on June 19, 1923, and $10,000

on March 28, 1925, and had also received $11,091.80 as interest on the sums received, making a total of $31,091.80; that he attained his majority on March 25, 1928, and requested the guardian to turn over to him his property; that for one reason and another the guardian did not turn over his property at that time, but on October 17, 1931, informed him that he had a balance due him of $202.82, and presented a paper for him to sign, which paper was designated as a final return of the guardian, a copy of which was attached to the petition as exhibit A; that the guardian, Mrs. W. D. Akin (now Mrs. H. C. Hoke), is his mother, and that at that time she promised to give him a full and complete statement and accounting of the moneys received by her as guardian and paid out by her as such, and stated that all money received by her had been duly and legally expended as provided by law; that at the time he signed the paper he had had practically no experience in business, was unfamiliar with matters of accounting, did not have any attorney to represent him, relied implicitly on his mother who was his guardian, and did not know until he had employed an attorney that no proper orders of the court of ordinary had been taken authorizing the expenditure of his funds, and that no returns had been filed in the court of ordinary as required by law; that before the guardian gave him any statement as to her actings as guardian she applied for and obtained from the court of ordinary letters of dismission; that sometime thereafter the guardian gave him a typewritten sheet which she claimed was a statement showing the receipts and expenditures by her as his guardian, but did not give him any vouchers or exhibit any checks or receipts for the expenditures; that the statement was not a full, true, accurate, and correct accounting, and a great many of the items listed thereon were not legal expenditures; that the receipt signed by him was signed relying upon the representations that were made to him by his guardian, which were not true and were material in obtaining his signature, and he was defrauded by these false and fraudulent representations to his damage; that the guardian never filed in the court of ordinary any annual reports and returns, and never obtained from the ordinary any order authorizing and allowing her to encroach upon the corpus of his estate; that all expenditures made out of the corpus were void and not proper, and there has been no accounting by the guardian for these amounts as the law requires;

108

that he is entitled to a full, true, correct, and accurate statement and return from the guardian of her actings and doings as guardian, and is entitled to have presented to him for examination all receipts and vouchers for moneys expended for him by the guardian; that the order dismissing the guardian is void on account of the facts set forth herein, and should be revoked and set aside; and that the guardian should be required to account and to pay him such money as belongs to him. Wherefore he prayed that the order discharging the guardian be revoked and set aside, that the guardian be required to make a full, true, correct, and legal report to the court as guardian; that judgment be rendered in his favor against the guardian for such amounts as might be determined to be due him; and that a rule nisi issue requiring the defendant to show cause why these prayers should not be granted.

The guardian filed an answer admitting some paragraphs of the petition and denying others, and alleging that before she obtained letters of dismission the plaintiff went over the accounts at least eight or nine times, examined and inspected the checks and each item thereof, and ratified and approved each of the expenditures; that she had furnished a full, true, correct, and accurate statement of her acts and doings as guardian, that the plaintiff had carefully checked over the same and agreed that her expenditures were proper, and had examined all receipts and vouchers and admitted that they were correct and proper; that a copy of her statement was furnished to the plaintiff when he became of age; and that on July 13, 1929, he entered into an agreement with her concerning a house and lot on Gordon Street in the City of Atlanta, agreeing to give her $1000 of her money which went into the house and lot, and he took the house and lot and gave her a complete release and ratified every expenditure made by her on the property, and all other expenditures made by her, and thereafter, at least five or six times, he checked over these expenditures, looked at the checks, acknowledged the receipt of all moneys, and at such times requested that the money he had left be handled as it was theretofore.

Exhibit A attached to the petition was as follows:

"Final Return. Mrs. W. D. Akin, Guardian Oliff T. Walraven,

"In account with Estate of said minor, Oliff T. Walraven,

Dr. To cash from

| | |
|---|---|
| June 19, 1923, Sheriff Fulton County, | $10,000.00 |
| March 28, 1928, Sheriff Fulton County, | 10,000.00 |
| Interest upon investment, | 11,091.80 |
| Cr. By cash paid Oliff T. Walraven | 31,091.80 |

"Received of Mrs. W. D. Akin, Guardian, the sum of $202.82 which is the balance of the $20,000.00 principal, $11,091.80 interest, total of $31,091.80. I having received heretofore principal and interest in the amount of $30,888.68.

"Witness my hand and seal this 17th day of October, 1931.

O. T. Walraven.

"Witness: C. J. McBride."

The petition was sworn to by the plaintiff on December 5, 1933. The order to show cause was granted by the ordinary on December 9, 1933. At the January term, 1934, of the court, the ordinary refused the prayers of the above petition, and the plaintiff appealed to the superior court, where by consent of the parties the case was referred to an auditor. The auditor heard evidence and made a report to the court, filing therewith the transcript of the testimony and certain documentary evidence. The report contained thirty-five findings of law on objections to testimony, one ruling on a motion to dismiss the case, and ten other rulings of law. His findings of fact numbered forty-eight. The net result of the report was the finding by the auditor that the defendant owed the plaintiff $4116.24 on October 17, 1931, and that judgment should be entered for said sum with interest at 7 per cent. from October 17, 1931. The defendant moved to recommit the report to the auditor, on several grounds. The court refused this motion, and the defendant excepted pendente lite. Both parties filed exceptions to the auditor's report, which need not be specifically stated. The court overruled all the exceptions of law of both parties, and referred the exceptions of fact to a jury. The jury sustained the auditor's findings of fact, except as to four unimportant particulars. Both parties filed exceptions pendente lite to the overruling of their exceptions of law to the auditor's report. The defendant made a motion for new trial on the general grounds, and on certain special grounds. The court overruled the motion, and the defendant took a bill of exceptions which assigned error on the overruling

of her motion to recommit the case to the auditor, on the overruling of her exceptions to findings of law in the auditor's report, and on the overruling of her motion for new trial. After the rendition of the verdict and judgment and during the pendency of the motion for new trial the plaintiff died, and his wife, Mrs. Bessie Walraven, as his administratrix was made party plaintiff. She filed a cross-bill of exceptions assigning error on the judgment overruling the plaintiff's exceptions of law to the auditor's report.

The petition to vacate the guardian's letters of dismission and require her to account alleges that the order dismissing the guardian "is void, on account of the facts set forth herein." The alleged facts were: giving bond for $20,000 instead of $40,000; failing to give a full and complete statement of account; failure to exhibit vouchers and receipts before her dismissal; failure to obtain from the court of ordinary orders authorizing the expenditures; failing to make the annual returns required by law; and representing that the sum of $202.82 was the balance due to the ward on October 17, 1931. Since the plaintiff's petition alleges that the guardian had been dismissed by a judgment of the ordinary, and the evidence shows that the proceeding was regular as to the filing of a final return and the issuing and publication of the necessary citation, the first question to be determined is whether the finding of law by the auditor to the effect that the judgment of the ordinary was void can be sustained. The only ground on which the judgment is attacked is fraud. The plaintiff in error contends the allegations of fraud were not sufficient in law, but no demurrer was filed. Consequently the question must be decided under the allegations of the plaintiff and the evidence in the case. It appeared that the guardian, in applying for her letters, alleged that the ward was entitled to $10,000 as the proceeds of the settlement of a suit for personal injuries, and the ordinary ordered her to give bond in the sum of $20,000, which was done. On receiving the $10,000 the guardian turned it over to her attorney to invest at 8 per cent. interest. Subsequently the guardian received another $10,000 from the same source as the first, the settlement of the damage suit having provided for the payment to the ward of $20,000 in two instalments. The guardian turned this second amount over to her attorney as before. Thereafter all the expenditures by the guardian were made through the attorney, who gave his personal checks for the amounts

expended. The guardian herself kept no account of receipts and disbursements, no returns were made to the court of ordinary during several years, and no orders were obtained from the ordinary authorizing any expenditures. The guardian was appointed on June 13, 1923; the ward, her son, then being sixteen years of age. From then on the guardian and her attorney conducted her administration without regard to the court of ordinary. Since the ward was a minor, he is not to be concluded by such consent as he may have given during minority to the expenditures made by his mother. But such information as he acquired about how his money was being handled may be considered in connection with his acts after attaining majority. *Brinsfield* v. *Robbins,* 183 *Ga.* 258, 271 (188 S. E. 7).

The plaintiff himself testified that he was given or shown a statement of account by the attorney in 1926, another just after he came of age, and again on October 17, 1931. As vouchers he was also shown the checks of the attorney for various expenditures. The auditor in the forty-second finding of fact said: "At the time referred to in the forty-first finding of fact, plaintiff had an opportunity of making a thorough inspection and examination of the books and statements of account kept by Mr. Hewlett." Soon after the ward had become of age he requested the attorney who had been handling his money for the guardian to retain what he had in his hands and to continue handling it as before. He also went to the attorney's office in 1929, and looked over some of the attorney's checks, saw the checks there just like they were, who they were payable to and the amounts. On July 13, 1929, the ward then being twenty-two years old, he arranged with his mother to deed to him a house and lot which had been purchased with his funds, but without any order of the court, and that he would pay her $1000 which she claimed to have paid on the property out of her own money. The mother and son entered into a written agreement to this effect, and the son received a deed to the property and the attorney paid the mother $1000 as agreed between them. On October 17, 1931, the plaintiff, then being twenty-four years old, went to the attorney to get the balance of his money and was shown an itemized statement of account, the books of account, and the checks which had been given by the attorney for the various expenditures listed on the statement. On this account the attorney

charged himself with $11,091.80, representing interest on the $20,000, less interest at 8 per cent. on each disbursement from the time it was made. The plaintiff examined the account and all or some of the checks, and signed the receipt for $202.82, a copy of which is attached to his petition. About that time, as he testified his mother wanted to get discharged as guardian in order to save the expense of bond premiums; and he advised her to apply for a discharge. Shortly thereafter the mother applied to the court of ordinary for an order discharging her and the order was granted at the January term 1932. On December 9, 1933, the plaintiff filed the petition in the present case.

Giving to this petition the construction most favorable to the plaintiff, it attacks the judgment of the ordinary dismissing the guardian, on the ground of fraud. The fraud alleged is in obtaining the judgment by means of a receipt in full, signed by the plaintiff, which he says did not truly represent the status of the account between him and the guardian. No irregularity of court procedure is alleged. The petition does allege an irregularity in the administration of the estate, in that the guardian's original application for letters represented the estate to consist of the sum of $10,000, whereas in fact the guardian afterwards received another $10,000 to secure which no additional bond was given, and which was not reported to the court until the time of the final return. But in the final return the guardian charged herself with the full $20,000, and more than $11,000 of interest thereon. The irregularity and disregard of law in that the guardian did not make annual returns to the court of ordinary would have been good ground for removing the guardian if any application had been made to that end. The evidence also showed expenditures which were not proper on account of not being authorized by an order of the ordinary, or on account of not being shown to have been made for the ward. When all is said, the plaintiff's case must rest on the allegation that the guardian procured the judgment of dismissal by filing a final return which was false in fact. The documentary evidence shows that the guardian regularly applied for a discharge from the guardianship, and at the January term, 1932, the ordinary passed an order reciting that the guardian has applied for a discharge and that "citation therein was issued and published as the law requires, and it also appears from the exami-

nation of the condition of the estate and the conduct and accounts of said guardianship that she has faithfully and honestly discharged the trust and confidence reposed in her and is legally entitled to discharge therefrom; and no objection being offered thereto," it is ordered that she be discharged. It can not be held, as a matter of law, that the judgment of the ordinary, which was based upon a receipt in full signed by the ward who was then twenty-four years of age, and who failed to appear or make any objection to the discharge of the guardian, although duly cited to do so, is void. The auditor, however, in his first finding of law held that the order of the ordinary discharging the guardian "is void and should be set aside." No reason is given for this decision, and there is no specific finding of fact or facts on which this decision rests. Nor is there any general finding to the effect that the judgment was obtained by fraud. Fraud is generally a question for the jury. Yet in consequence of the summary manner in which the auditor vacated the judgment, the controlling issue of fraud or no fraud never got to the jury. No instructions were given by the court about it. The guardian duly excepted to this finding.

In *Little* v. *West*, 145 *Ga.* 563,568 (89 S. E. 682), the Supreme Court said: "Of course, the judgment of dismissal of the guardian in this case is a final judgment, and includes anything back of it, unless it can be opened for fraud in its procurement. The judgment granting letters dismissory to the guardian is a bar to any contention as to an accounting back of it, unless it is opened; but if it is opened so that an accounting can take place, then the question of what items are proper to be allowed arises." From decisions hereinafter cited, and the provisions of the Code, it appears that a court may set aside its own judgment on account of fraud in its procurement; or a court of equity, on a petition filed for that purpose, may decree a judgment of another court to be void on account of fraud in its procurement. But there are limits to this power. The Code, § 37-220, declares: "Equity will interfere to set aside a judgment of a court having jurisdiction only where the party had a good defense of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part." § 110-710, provides: "The judgment of a court of competent jurisdiction may be set aside by a decree in equity, for

fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant." In *Hill* v. *Harris,* 42 *Ga.* 412, the Supreme Court said that an injunction of a judgment at law could not be granted on the ground of subsequent discovery of a partial defense, unless the petition avers that the failure to acquire knowledge of it before the trial "was wholly unmixed with any negligence on the part of the complainant or any want of attention to the means of information within the reach of a man of ordinary prudence and discretion." In *Hightower* v. *Williams,* 104 *Ga.* 608, 610 (30 S. E. 862), it was said: "While the judgment of a court may be set aside for proper cause, it will not be done if the party complaining does not show proper diligence in discovering or attempting to discover the facts upon which he relies to annul the judgment." To the same effect is *Gray* v. *Georgia Loan & Trust Co.,* 166 *Ga.* 445, 450 (143 S. E. 501); *Beddingfield* v. *Old National Bank & Trust Co.,* 175 *Ga.* 172, 187 (165 S. E. 61); *Rawleigh Co.* v. *Seagraves,* 178 *Ga.* 459 (173 S. E. 167). The case of *Hightower* v. *Williams,* supra, was a motion in the court of ordinary to set aside the probate of a will on the ground of fraud; and it was held that the judgment could not be set aside. There is nothing in the Code which gives to a court more latitude of power to set aside its own judgment than is possessed by a court of equity in setting aside a fraudulent judgment of another court. A person who, through ignorance, allows a judgment to go against him, can not afterwards have it set aside even on the ground of fraud, if he himself has not exercised ordinary diligence in the premises. In *Brinsfield* v. *Robbins,* 183 *Ga.* 258, 271 (supra), the Supreme Court said: "A person of normal mental faculties can not, after arrival at majority, obliterate all transactions incident to a former guardianship, and disregard all impressions received therefrom, merely because they relate to events which occurred during minority."

It appears from the testimony of the plaintiff that before he came of age a question was presented as to the legality of his guardian buying an automobile for him. He also testified that he had owned three automobiles before he became twenty-one years of age. Also, in 1929, when he was twenty-two years of age, it appears that he learned that the title to the house and lot which his mother had bought mainly with his funds was put in her name,

and he made an agreement with her that she would deed him the property and he would pay her $1000, that being the amount which she claimed to have put into the property out of her own funds. This agreement was carried out. This was more than two years before the guardian's attorney settled with the plaintiff. Moreover, the plaintiff was familiar with the way in which his money was being handled during his minority and afterwards, by his request, for he on numerous occasions went to the attorney and obtained sums of money. Besides, the auditor in the forty-second finding of fact, found that at the time referred to, when the plaintiff went to the attorney's office to get the balance of the guardianship funds due him, he had an opportunity of making a thorough inspection and examination of the books and statements of account kept by the attorney. He did not except to this finding of fact. Not only were the foregoing facts, which he knew, sufficient to put him on inquiry, but he had ample opportunity to inform himself (if uninformed) as to the matters of which he now claims to have been ignorant. Furthermore, he well knew beforehand that his mother was going to apply for discharge, he having advised her to do so, and though he was legally cited by the ordinary to show cause against the discharge, he filed no objection and did not appear. He therefore had his day in court when he could have made all the objections which he now makes to the account kept by the guardian's attorney. As was said by the Supreme Court in *Brinsfield* v. *Robbins,* supra: "The conduct of the guardian, of which the plaintiff as a conscious and intelligent human being had knowledge, was sufficient as a matter of law to put her upon inquiry and require action after the attainment of her majority. From that date forward she was capable of exercising the diligence of an adult, that is ordinary diligence." In the language of the Supreme Court, in *Little* v. *West,* supra, the judgment of dismissal of the guardian is a "final judgment" and "is a bar to any contention as to an accounting back of it," no sufficient reason having been shown for setting the judgment aside.

The judgment was in substance an adjudication that the guardian did not owe the ward anything. It is a conclusive bar to any recovery by the plaintiff.

It is unnecessary to consider whether the court erred in refusing to recommit the case to the auditor, or in overruling any of the

exceptions of either party to the auditor's report, other than the one exception of law which is herein sustained. The auditor erred in finding that the judgment was void and should be set aside, and the court erred in overruling the exception to this finding and in overruling the motion for new trial.

*Judgment reversed on the main bill of exceptions. Cross-bill dismissed. Sutton and Felton, JJ., concur.*