JOHN CARVEY *v.* INDIANA NATIONAL BANK

[No. 2-776A251. Filed April 18, 1978.]

*John C. Carvey,* of Indianapolis, for appellant.

*James R. McClarnon, Robert S. Hulett, Smith, Morgan & Ryan* of Indianapolis, for appellee.

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

## STATEMENT OF THE CASE

Defendant-appellant John C. Carvey (Carvey) appeals from the denial of his motions to set aside a default judgment obtained by plaintiff-appellee Indiana National Bank (Indiana National).

We reverse and remand.

## FACTS

The following facts are disclosed by the record. Although many of the facts are provided in affidavits filed by Carvey, his statements were not controverted by Indiana National or its counsel, except as indicated.[1]

1. On December 15, 1967, Interstate Inns, Inc. executed a promissory note payable to The Indiana National Bank of Indianapolis (predecessor to Indiana National). This note was renewed from time to time thereafter.

2. Carvey and seven other persons executed an unconditional guaranty on July 24, 1968. This guaranty imposed joint and several liability upon each signer for amounts up to and including sixty thousand dollars for obligations of Interstate Inns, Inc. to Indiana National.

3. Interstate Inns, Inc. subsequently went through bankruptcy proceedings. Indiana National filed its claim for $56,700.00 plus 8% interest. Indiana National received $35,417.87 from the bankruptcy proceedings and then looked to the individual guarantors for payment of the remainder.

4. The firm of Smith, Morgan and Ryan represented Indiana National. Robert D. Morgan, James R. McClarnon, and Robert S. Hulett were members or associates of said firm during the events considered in this appeal.

5. During the summer and early fall of 1975, Hulett initiated telephone conversations with Carvey, who also is an attorney, concern-

---

1. In *State ex rel. Latham v. Spencer Circuit Court* (1963), 244 Ind. 552, 556-57, 194 N.E.2d 606, our Supreme Court explained that

" . . . when affidavits are contemplated in proceedings before the lower court and the matters averred in such proponent's affidavits are not denied or controverted by the opposing party, the facts stated in said affidavit may be deemed to be admitted for the purpose of the court's ruling upon such matter. . . ."

ing liability of the guarantors. During these conversations, Carvey stated that he was willing to pay his pro rata share of the balance due on Interstate's obligation. This pro rata share was estimated by Hulett and Carvey to be approximately $4,300.00. Hulett indicated that Indiana National was agreeable to this offer.

6. Hulett informed Carvey that, in order to preserve appearances, Indiana National would probably sue all guarantors, or at least those in Indiana; Hulett also informed Carvey that a final settlement with any guarantors willing to pay a pro rata share might have to wait until suit was processed against uncooperative guarantors.

7. Carvey told Hulett that Carvey had no desire to participate in litigation. Carvey further stated to Hulett that Carvey would not actively defend against such a lawsuit but instead would stand ready to pay his pro rata share when called upon by Indiana National to do so.

8. On November 7, 1975, Indiana National filed its complaint against five of the eight guarantors. In Count Five of its complaint Indiana National prayed for judgment against Carvey for the full amount allegedly due ($30,288.10 plus interest at the rate of 8% from January 15, 1975) plus attorney fees of $9,000.00. Service of process was made on Carvey November 11, 1975.

9. Carvey filed no appearance and filed no answer. Carvey later averred that his inaction was grounded solely upon his understanding, resulting from conversations with Hulett, that the lawsuit was solely for the purpose of pursuing uncooperative guarantors.

10. Indiana National filed its application for default judgment against Carvey January 5, 1976. It also filed a notice of application for default judgment, which stated that Indiana National would apply to the trial court for entry of default judgment on January 22, 1976. Carvey received the notice on or before January 20, 1976, after he returned from a vacation.

11. On January 20, 1976, Carvey unsuccessfully attempted to telephone Morgan. When his efforts to reach Morgan again proved fruitless on the morning of January 21, 1976, Carvey proceeded to file his answer, including an affirmative defense, at approximately 1:30 p.m. on that date. Carvey hand-delivered a copy of his answer to the law

firm of Smith, Morgan and Ryan and asked the receptionist to bring the answer to the attention of Hulett immediately.

12. Carvey continued his attempts to contact Morgan by telephone and succeeded at approximately 9:30 p.m. on January 21, 1976. Carvey informed Morgan that Carvey had filed an answer that date. Carvey further informed Morgan that Carvey remained ready to pay his pro rata share.

13. Morgan responded during that telephone conversation by stating that (a) he was glad that Carvey no longer was in default; (b) Hulett was out of the city and would not return until January 26; and (c) Morgan would inform Hulett of the telephone conversation and of Carvey's position when Hulett returned.

14. Carvey later averred that, solely because of statements made by Morgan during this telephone conversation, Carvey did not appear in court on January 22, 1976.

15. On January 22, 1976, McClarnon obtained a default judgment against Carvey, on behalf of Indiana National, which judgment reads, in part, as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

1. The defendant, John C. Carvey, was served with summons and a copy of plaintiff's complaint by the Sheriff of Marion County, pursuant to the Indiana Rules of Civil Procedure.

2. The defendant, John C. Carvey, has made neither an appearance in this action nor has he filed his answer.

3. That The Indiana National Bank is entitled to, and judgment is herein entered for plaintiff in the amount of $32,578.11 plus interest at 8% per annum from January 15, 1975, for a total of $35,084.25, plus reasonable attorney fees in the amount of $9,000.00, for a total judgment of $44,084.25, together with costs of this action and interest on the judgment until paid."

16. On January 28, 1976, Morgan called Carvey and informed him of the default judgment. Morgan stated that Carvey's answer had not been brought to the attention of the attorneys of record (Hulett and McClarnon) until January 26, 1976.

17. Carvey filed a motion to set aside default judgment January 30, 1976, alleging that he had filed an answer January 21, 1976. An affidavit explained his personal service of the answer and his conversation with Morgan.

18. Indiana National filed a response February 11, 1976, arguing that the entry of default judgment was proper despite the fact that Carvey had filed a tardy answer. The trial court denied Carvey's motion February 13, 1976.

19. Carvey filed an amended motion to set aside default judgment February 20, 1976. His affidavit accompanying that motion set forth the information contained in the paragraphs above. He contended that relief should be granted pursuant to Ind. Rules of Procedure, TR. 60(B)(1) (mistake, surprise or excusable neglect), TR. 60(B)(3) (fraud, misrepresentation, or other misconduct of an adverse party), and TR. 60(B)(8) (any other reason justifying relief from the operation of the judgment).

20. Indiana National, by McClarnon and Hulett, filed a response February 23, 1976. In that response Indiana National argued that (a) Carvey had exhausted his TR. 60 remedy with his first motion and could not raise new issues in an amended TR. 60 motion filed after the first motion was denied; (b) Carvey had refused to pay a pro rata share despite Indiana National's demand by letter dated July 30, 1975, for a payment of a pro rata share in the amount of $7,797.02; (c) several other guarantors had responded to such a letter and had paid their pro rata shares; and (d) "Defendant's account of telephone calls and late pleading has no meaning. He knew of the hearing on the default and chose not to appear."

21. The trial court denied Carvey's amended motion February 27, 1976.

22. Carvey filed a motion to vacate entry overruling motion to set aside default judgment on March 8, 1976. He stated that (a) he had filed his initial TR. 60 motion with the belief that McClarnon had obtained the default judgment solely because McClarnon did not realize that an answer had been filed the preceding day; (b) Carvey had no reason to believe otherwise until he received the response which was filed by Indiana National February 11, 1976, but not received by Carvey

until February 14, 1976 (which was after the trial court had ruled on his initial TR. 60 motion); (c) Carvey never received the letter purportedly mailed to him July 30, 1975, by Smith, Morgan & Ryan; (d) if Indiana National had received $7,797.02 from each of several guarantors, as stated in its response, Indiana National should not receive from Carvey the difference between the full amount of Interstate's debt and the amount received from the bankruptcy proceedings. Additionally, Carvey set forth his account of events which had occurred earlier.

23. Indiana National, by McClarnon and Hulett, filed a response in which it argued that Carvey's TR. 60 remedy had been exhausted with his initial motion.

24. On March 18, 1976, the trial court held a hearing on Carvey's motion to vacate. Hulett and McClarnon were not present; Morgan represented Indiana National at the hearing. Carvey, the sole witness, recounted the relevant events which had occurred prior to the hearing. Morgan commented to the trial court that Carvey had failed to tender payment of a pro rata share. The trial court denied Carvey's motion.

25. By certified letter dated March 19, 1976, McClarnon informed Carvey that no pro rata payment by Carvey would be acceptable.

26. Carvey filed a motion to correct errors March 22, 1976, which the trial court denied April 12, 1976.

### ISSUES

Carvey asks this court to consider two issues:

1. Did the trial court err in refusing to set aside the default judgment because of mistake, surprise, and excusable neglect by Carvey, and misrepresentation by the adverse party?

2. Did the trial court err in refusing to set aside the default judgment because of excessive damages?[2]

*Issue One*

Carvey filed his motion to set aside default judgment January 30, 1976, the substantive portion of which reads as follows:

---

2. Because of our resolution of Issue One, we do not address Issue Two.

"Comes now John C. Carvey, one of the above captioned defendants and pursuant to Trial Rule 60, moves this Honorable Court to set aside the default judgment entered against him on January 22, 1976, for the following reasons, to-wit:

1.   That he filed his Answer and Affirmative Defense with this Court on January 21, 1976, and personally served a copy thereof upon adversary counsel within an hour thereof and was thereupon no longer in a state of default, all of which appears by the affidavit of defendant attached hereto and made a part hereof.

2.   That adversary counsel failed to bring this Answer and Affirmative Defense to the attention of the Court.

WHEREUPON, defendant, John C. Carvey, moves that default judgment inadvertently entered be set aside."

Insofar as Carvey's motion implies that the filing of a tardy answer automatically removes a defendant from a state of default, it is erroneous. We quote from Judge Lybrook's opinion in *Clark County State Bank v. Bennett* (1975), 166 Ind. App. 471, 336 N.E.2d 663, 667:

"... we are of the opinion that the question of plaintiffs' entitlement to judgment by default was not rendered moot by the filing of Citizens' delinquent answer. The trial court remained vested with the power to entertain plaintiffs' application and exercise its discretion balancing on the one hand the policies of speedy determination of actions and avoidance of delay, and on the other, the policy favoring resolution of causes on their merits. . . ."

In his TR. 60 motion filed January 30, 1976, Carvey drew the trial court's attention to its error in the default judgment: the trial court erroneously stated that Carvey had filed no answer. However, Carvey offered no explanation for filing his answer fifty-one days after it was due. Accordingly, the trial court did not abuse its discretionary power on February 13, 1976, when it ruled on Carvey's motion to set aside the default judgment.

TR. 60(C) provides that a ruling or an order denying relief by motion under TR. 60(B) shall be deemed a final judgment and an appeal may be taken therefrom. After the trial court denied Carvey's initial TR. 60 motion, Carvey filed an amended TR. 60 motion. Indiana National has consistently argued in the trial court and now in this court

that the motions, filed after denial of the initial TR. 60 motion, were mere surplusage; a motion to correct errors was the only proper motion after the trial court denied Carvey's initial TR. 60 motion.

The Indiana Rules of Procedure are to be construed in a manner promoting the just, speedy, and inexpensive determination of every action. TR. 1. A party may not file repeated TR. 60 motions until he finally either offers a meritorious ground for relief or exhausts himself and the trial court in the effort to do so. However, the facts in the case at bar do not lend themselves to routine application of such a procedural rule for the reason that the unrefuted facts indicate that Carvey relied upon certain representations and did not become aware of the full implications of those representations until after his first TR. 60(B) motion had been filed. To deny Carvey the opportunity to bring his newly discovered evidence of misrepresentations and his detrimental reliance thereon to the attention of the trial court would be to exalt form over substance and expediency over justice.

In discussing strict adherence to our rules of procedure and the exceptional circumstances that occasionally warrant deviation therefrom, Justice Hunter stated in *Soft Water Utilities, Inc. v LeFevre* (1973), 261 Ind. 260, 269, 301 N.E.2d 745:

"... Certainly, the orderly procedure of our judicial system calls for adherence to rules designed to achieve that goal. But we should never ignore the plain fact that the consequence of strict adherence to procedural rules may occasionally defeat rather than promote the ends of justice. ..."

He further stated in *American States Insurance Co. v. State ex rel. Jennings* (1972), 258 Ind. 637, 640, 283 N.E.2d 529:

"... Although our procedural rules are extremely important, it must be kept in mind that they are merely a means for achieving the ultimate end of orderly and speedy justice. We must examine our technical rules closely when it appears that invoking them would defeat justice; otherwise we become slaves to the technicalities themselves and they acquire the position of being the ends instead of the means. ..."

We emphasize that the only disputed issues are (1) whether Carvey

ignored an opportunity to pay a pro rata share, as set forth in letter dated July 30, 1975,[3] and (2) whether Carvey at any time tendered payment of a pro rata share in any amount. Carvey set forth numerous averments in his affidavits which Indiana National totally ignored; it made no effort to deny, dispute, or challenge such averments in any way. Therefore, we do not deal with a case involving conflicting evidence on critical issues. Instead, we deal with a case in which the uncontroverted matters set forth in said affidavits may be deemed to be admitted. *State ex rel. Latham v. Spencer Circuit Court, supra.*

Carvey steadfastly has argued that Indiana National obtained the default judgment against him by misrepresentation. First, Carvey argues that Hulett led Carvey to believe that the lawsuit was for the purpose of pursuing uncooperative guarantors; that Carvey did not need to defend in the action; and that Hulett would inform Carvey of the manner in which he was to pay his pro rata share after the uncooperative guarantors had been pursued.

In *Sherer v. Akers* (1898), 74 Mo. App. 217, 225, plaintiff obtained a default judgment against a surety on a promissory note. After surety had been served with notice of the suit, plaintiff told surety that the purpose of the action was solely to foreclose a mortgage given to secure the note by the principal debtor. Plaintiff told surety that he did not need to make an appearance or a defense. The court reviewed conflicting evidence. In reversing a judgment denying the surety's petition to set aside the default judgment, the court explained:

"... It appears from these that plaintiff made no defense whatever to the note, although the evidence shows that he had become aware of his release from liability thereon by reason of the transaction between defendant and Sherer and wife. It further appears that immediately after the rendition of the judgment on the note, the plaintiff applied to the court to set aside the same and for permission to make the very defenses alleged in this petition as his grounds for relief. It is unreasonable to suppose that plaintiff would

---

3. This issue is perhaps not disputed. Indiana National insists the letter was sent; Carvey insists the letter was not received. Both contentions could be accurate, for the letter might have been lost in the mail.

have acted in such a manner, unless he had been misled by the statements as to the nature of the suit on the note made to him by the defendant. . . ."

Secondly, Carvey argues that Morgan led Carvey to believe that no default judgment would be pursued on January 22, 1976, when Morgan informed Carvey that Carvey was not in default after Carvey filed his tardy answer;[4] that Hulett, the attorney with whom Carvey had dealt in the past concerning the matter, was out of the city until January 26; and that Morgan would discuss the matter with Hulett as soon as Hulett returned.

In *Douthit v. Douthit* (1892), 133 Ind. 26, 35, 32 N.E. 715, the trial court set aside a default judgment and the Supreme Court affirmed. The plaintiff and his attorney advised the defendant that he need not appear, for they would not pursue the lawsuit until plaintiff and defendant could complete an accounting concerning their former partnership operation. Relying upon such assurance, the defendant did not defend in the lawsuit; plaintiff obtained a default judgment. Our Supreme Court stated:

"... Where parties and counsel prevent an appearance and defense by representations and promises, they are guilty of fraud if, in violation of the promises and contrary to the representations, they take a default in a case where they know there is a defense. . . ."

Thirdly, Carvey argues that McClarnon misled the trial court when he failed to inform the court that, contrary to the statement in the court's default judgment, Carvey had filed an answer. The result is the same, whether McClarnon was or was not aware of the copy of the answer hand-delivered to McClarnon's office the preceding day.

In *Whittaker v. Warren* (1901), 14 SD 611, 86 N.W. 638, plaintiff's attorney informed the trial court that defendant had failed to enter an appearance when in fact defendant had entered an appearance. The court set aside the default judgment later, and the Supreme Court of South Dakota affirmed. In doing so, the Supreme Court recognized that

---

4. Obviously, the trial court, not Morgan, had authority to determine the propriety of default judgment. Morgan's comment goes solely to the question of whether Carvey could reasonably have believed that he did not need to attend the hearing scheduled for January 22, 1976.

plaintiff's attorney probably acted without ill-motive but nonetheless had misstated that status of the proceeding and had misled the trial court.

Carvey steadfastly has argued that Indiana National maintained its default judgment against him by misrepresentation. Carvey argues that Morgan informed Carvey that McClarnon was not aware of Carvey's answer when McClarnon obtained the default judgment. This statement led Carvey to believe that the default judgment would not have been obtained if McClarnon had known the true state of the proceedings. Accordingly, Carvey filed his TR. 60 motion January 30, 1976, with the justified belief that his motion would not be contested and that his motion was for the purpose of correcting the court's inadvertent entry of the default judgment.

Indiana National did contest his motion, however, and Indiana National thereafter argued that Carvey's remedies had been exhausted in the trial court.

Indiana National has taken the position that Carvey, an attorney, had full knowledge of the possibility of a default judgment and that his decisions to act or not to act must be attributed solely to himself and not to Indiana National.

We quote from *Hirsch v. Collier* (1961), 104 Ga. App. 271, 121 S.E.2d 318, 321:

" 'A person who, through ignorance, allows a judgment to go against him, cannot afterwards, have it set aside, even on the ground of fraud, if he himself has not exercised ordinary diligence in the premises.' Hoke v. Walraven, 57 Ga. App. 106, 114, 194 S.E. 610, 615. But when one party does give the other assurances upon which he can reasonably rely, that the suit will be dismissed or judgment will not be taken, and then procures a judgment taking advantage of the trust and confidence of the other party, the party misled, who is not himself negligent, has a ground to set aside the judgment. . . ."

The record placed before this court in the case at bar causes grave concern. In the trial court proceedings and in briefs submitted to this court, Carvey has alleged that Indiana National obtained and maintained its default judgment by misrepresentation. Carvey's averments

as to the statements made by attorneys for Indiana National have gone unrefuted, although Indiana National has filed responses in the trial court and a brief in this court in which it has thoroughly and cogently set forth arguments on issues of law. Its approach is characterized by the statement included in its response filed February 23, 1976: "Defendant's account of telephone calls and late pleading has no meaning." To the contrary, if the legal profession is to survive and competently fulfill its role, such allegations must have meaning and must be given recognition.

The Code of Professional Responsibility for lawyers includes Ethical Consideration 7-10:

"The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm."

We quote from Judge Staton's opinion in *Green v. Karol* ██ (1976), 168 Ind. App. 467, 344 N.E.2d 106, 110 and 111:

". . . a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation. On the other hand, there is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. . . . The trial court, in its discretion, must balance these factors in light of the circumstances of each case.

\* \* \*

The defaulted party has the burden to show the trial court why a default judgment would result in an injustice and why his failure to plead should be excused. . . . However, a default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party. . . ." (Footnotes and citations omitted.)

Carvey, prior to entry of default judgment, filed an answer in which he pleaded an affirmative defense: Carvey alleged that Indiana National had released one or more guarantors without Carvey's consent. Carvey was defaulted before he had opportunity to present evidence in support of his allegation. The release of a co-guarantor, in some instances,

may affect the liability of remaining guarantors. See generally, 14 I.L.E. *Guaranty* § 41 (1959); 38 C.J.S. *Guaranty* §§ 67, 82 (1943); 72 C.J.S. *Principal and Surety* § 231 (1951).

Indiana National obtained a default judgment totaling $44,084.25. In light of the substantial amount of money involved, the material issues of fact surrounding the possible release of one or more co-guarantors, the short length of the delay, and the unrefuted averments concerning questionable conduct on the part of attorneys representing Indiana National, we hold that the trial court abused its discretion and committed reversible error when it refused to set aside the default judgment after all facts were revealed to it. Certainly justice would better be served by giving the parties their day in court.

The judgment is reversed, and this cause is remanded to the trial court for trial on the merits.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 374 N.E.2d 1173.