**SPEEDWAY SUPERAMERICA LLC, Appellant–Defendant,**

v.

**Gerald HOLMES and Madeline Holmes, Appellees–Plaintiffs.**

No. 45A05–0506–CV–332.

Court of Appeals of Indiana.

May 14, 2007.

**306**

Peter J. Rusthoven, Joseph G. Eaton, Paul L. Jefferson, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Robert J. Palmer, May Oberfell Lorber, Mishawaka, IN, Steven T. Parkman, Esq., South Bend, IN, Richard L. LaSalvia, Higgins & LaSalvia, South Bend, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Speedway Super-America LLC (Speedway), appeals the trial court's denial of its Motion to Correct Error and its subsequent Motions for New Trial, thereby affirming judgment in favor of Appellees–Plaintiffs, Gerald Holmes (Gerald) and Madeline Holmes (Madeline) (collectively, the Holmeses).

We affirm.

### ISSUES

Speedway raises two issues on appeal, which we restate as the following single issue: Whether the trial court abused its discretion in denying Speedway's subsequent motions for relief from judgment.

On Cross–Appeal, the Holmeses raise one issue, which we restate as whether the trial court abused its discretion in permitting Speedway to conduct destructive testing on the jeans after the time had passed for filing a motion to correct error when the testing would not reveal any information that was not capable of being discovered within thirty days after entry of judgment.

### FACTS AND PROCEDURAL HISTORY

Gerald is a truck driver. On May 31, 2000, while hauling a load from Wisconsin to Michigan, he and Madeline stopped to spend the night at a Speedway gas station in Lake County, Indiana. Prior to leaving the next morning, Gerald fueled his truck with Madeline sitting in the passenger's seat with the window down. As he was picking up the pump hose to fuel the passenger's side fuel tank, he slipped on diesel fuel and fell on his knee, twisting around as he fell and then hitting his back on the curb of the gas pump island. After getting up, he noticed a black spot next to the pump that he "knew . . . was diesel fuel." (Transcript p. 300). After falling, his clothing was "wet" and it appeared that his "total buttocks was covered with diesel fuel." (Tr. p. 300). Because of the amount of diesel fuel on his jeans, he changed his pants. Prior to leaving the Speedway gas station, Gerald explained the incident to the cashier; however, no incident report was filed.

On November 13, 2001, the Holmeses filed their Complaint for Damages, as a result of Gerald's fall at the gas station. On December 13 through December 16, 2004, a jury trial was held. At the close of the evidence, the jury returned a verdict in favor of Gerald in the amount of $1,125,000.00, reduced by 50% based on Gerald's comparative fault. Madeline was awarded no damages. On December 20, 2004, the trial court entered judgment on the verdict.

During the trial, outside the purview of the jury, the Holmeses' counsel alerted the

trial court and Speedway's counsel that the Holmeses intended to offer into evidence the jeans and boots Gerald was wearing at the time of his fall even though these items had not been listed in the pretrial order. Speedway objected to both the showing and introduction of these exhibits, mainly on the basis that by the late introduction of the items it had been denied an opportunity to perform testing determining whether or not the exhibits had in fact diesel fuel on them. Over Speedway's objection, the trial court allowed their admission, however, it barred the Holmeses from testifying that a stain on the jeans was diesel fuel. At the time the Holmeses formally moved to introduce the jeans and boots into evidence in the presence of the jury, Speedway filed no objection nor did it request a continuance to conduct testing.

On January 19, 2004, approximately a month after the trial court entered judgment in the case, Speedway filed a Motion to Preserve Evidence and Perform Destructive Testing, which was granted by the trial court over the Holmeses' objection. That same day, Speedway filed a combined motion pursuant to Indiana Trial Rules 59 and 60(B)(2), entitled "Motion to Correct Error and [Motion] for Relief from Judgment, Seeking New Trial or, in the Alternative, Reduce Damages." (Appellant's App. p. 677). Speedway explained its reason for filing this combined motion as follows:

> Speedway seeks such relief under both Trial Rule 59 and Trial Rule 60. The former required that a motion to correct error be filed when the new evidence "is capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial ..." T.R. 59(A)(1). Trial Rule 60 allows for relief from a judgment when newly discovered evidence "by due diligence could not have been discovered in time to move for a motion to correct errors ..." Because Speedway is uncertain whether the testing results theoretically "could" have been obtained within 30 days of the judgment (had the clothing in fact been available to it for testing), it has moved for a "new trial" relied under both Trial Rules in question. However, the [c]ourt need not tarry over this point in granting the requested relief, since by definition, the new evidence here must fall into one of the two complementary categories covered by the two Rules—*i.e.* it is either something that theoretically "could" have been obtained within 30 days of judgment (T.R. 59), or something that "could not" have been obtained during that period (T.R. 60).

(Appellant's App. p. 683).

In response to Speedway's combined motion, the Holmeses submitted affidavits explaining why the jeans and boots were not previously produced. The affidavits verify that new counsel for the Holmeses, who entered his appearance three weeks before trial, asked them about the jeans and boots Gerald was wearing on the day of his fall. If the items could be located, counsel requested the Holmeses to bring them with them to court. The day before trial, counsel was advised that the Holmeses had found the clothing. On the morning of the first day of trial, Holmeses' counsel notified Speedway's attorney that the Holmeses had located the jeans and boots and that he was considering whether to introduce the clothing into evidence. Counsel for the Holmeses did not actually see the items until the noon hour of the second day of trial, immediately prior to the bench conference discussing the potential admission of the clothing.

Next, on April 27, 2005, while a decision on the combined motion was pending, Speedway filed a Verified Motion in Sup-

port of its Motion for a New Trial and Request for a Hearing, pursuant to Indiana Trial Rule 60(B)(2). In this motion, Speedway asserted that newly discovered evidence showed that the jeans entered into evidence at trial was manufactured at least ten months after the accident and that the jeans had not been exposed to diesel fuel.

On May 18, 2005, the trial court entered its Order, denying Speedway's combined motion pursuant to Indiana Trial Rules 59 and 60(B)(2) and its separate motion pursuant to Indiana Trial Rule 60(B)(2). The trial court stated, in pertinent part, that

> Upon careful consideration of the evidence and arguments presented, the [c]ourt hereby finds that [Speedway] did not establish intentional misrepresentation on the part of the [Holmeses] in offering the jeans and boots as exhibits at the trial of this matter. Additionally, it was within the discretion of the trial court to allow the jeans and boots to be admitted, and there was no showing of an abuse of discretion. Lastly, [Speedway's] remedy at trial was to request a continuance, and [Speedway] failed to request one.

On June 14, 2005, Speedway filed a Motion for Relief from Judgment based on Indiana Trial Rule 60(B)(3), alleging intentional misrepresentations by the Holmeses during trial. On September 27, 2005, the trial court denied Speedway's final motion.

Speedway now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Speedway's several post-trial motions raise a variety of issues, not all of which are presented for our review. In this regard, Speedway is not challenging the admission of the clothing or the Holmeses purported failure to comply with discovery requests.[1] Instead, Speedway focuses its arguments solely on the trial court's denial of its respective motions for relief from judgment in accordance with Indiana Trial Rule 60(B)(2) and 60(B)(3).

Speedway's first motion, the combined "Motion to Correct Error and [Motion] for Relief from Judgment, Seeking a New Trial, or, in the Alternative, Reduce Damages," raised various issues. First, Speedway contended to have been severely prejudiced by the Holmeses lack of discovery and admission of the clothing. Secondly, Speedway asserted in its motion that relief pursuant to either Indiana Trial Rule 59 or 60(B)(2) should have been granted as the testing of the items would lead to newly discovered and very important evi-

---

1. In its brief, Speedway treats us to a muddled expose regarding whether it should have sought a continuance when the trial court admitted the stained jeans at trial and whether the Holmeses complied with the discovery requests. However, Speedway concedes that "[t]he dispositive point here, [], is that the only errors that *could* be waived by not seeking a continuance would indeed involve *admission* of the jeans and non-compliance with discovery and discovery requirements *not* Speedway's T.R. 60(B)(2) right to raise newly discovered evidence that contradicted and undermined crucial evidence admitted at trial." (Speedway's Br. pp. 19–21). In its Notice of Additional Authority, Speedway focuses this court's attention on *Outback Steakhouse of* *Fla., Inc. v. Markley*, 856 N.E.2d 65 (Ind. 2006). However, Speedway clarifies that the additional authority only serves to contradict the Holmeses' argument that "because Speedway did not seek a continuance when the jeans were introduced, it may not be granted relief under [T.R. 60(B)(2) or (3)] based on evidence discovered post-trial showing that the stain on the jeans was not diesel fuel, and that the jeans had not even been manufactured at the time of the alleged fall." (Appellant's Notice of Additional Authority, pp. 1–2). Because we decide this appeal on a different ground, we do not need to review the merits of Speedway's additional authority. Therefore, we also deny Appellees' Motion for Leave to Amend Brief.

dence. Finally, Speedway claims that the awarded damages were excessive. None of the issues raised on Speedway's combined motion are apparently contested on appeal.

Speedway's Verified Motion in Support of its Motion for a New Trial and a Request for a Hearing, filed on April 27, 2005, asserted that newly discovered evidence disclosed the fact that the jeans did not contain evidence of diesel fuel and that the jeans were not manufactured until ten months after the incident occurred. Accordingly, Speedway maintains that it is entitled to a new trial pursuant to Indiana Trial Rule 60(B)(2). Speedway contests the trial court's denial of this motion.

Lastly, on June 14, 2005, Speedway filed a Motion for Relief from Judgment pursuant to Indiana Trial Rule 60(B)(3) asserting that the Holmeses misrepresented important facts with regard to the jeans. The trial court's denial of this motion is presented for our review.

Even though it is clear that Speedway only appeals the trial court's denial of its motion for relief from judgment based upon Indiana Trial Rule 60(B)(2) and 60(B)(3), we cannot decide this appeal without raising *sua sponte* the trial court's denial of Speedway's motion to correct error in accordance with Indiana Trial Rule 59. Unlike Speedway, we will "tarry" over the applicability of Ind. Trial Rule 59 or 60, as we find the procedural interplay between both rules to be dispositive in this case. (Appellant's App. p. 683 n. 2).

### I. *Standard of Review*

■■■■ A review under both T.R. 59 and 60 is governed by the same standard. We review the grant or denial of the motion for an abuse of discretion. *Shipley v. Key-Bank Nat. Ass'n*, 821 N.E.2d 868, 880 (Ind.Ct.App.2005); *Walker v. Kelley*, 819 N.E.2d 832, 836 (Ind.Ct.App.2004). An abuse of discretion occurs if the trial

court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. *Id.*

### II. *Indiana Trial Rule 59 and 60(B)(2)*

■■■■ Indiana Trial Rule 59 stipulates that a motion to correct error is not a prerequisite for appeal, *except* when a party seeks to address "(1) newly discovered evidence, including alleged jury misconduct, capable of production within thirty (30) days of final judgment which, with reasonable due diligence could not have been discovered and produced at trial." However, we note that "motions for a new trial predicated upon newly discovered evidence are viewed with disfavor." *Hawkins v. Cannon*, 826 N.E.2d 658, 663 (Ind. Ct.App.2005), *trans. denied.* Our supreme court has held that in order to obtain a new trial based on newly discovered evidence pursuant to T.R. 59, the defendant must show that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result.

*Id.* (citing *Kahlenbeck v. State*, 719 N.E.2d 1213, 1218 (Ind.1999)). The defendant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Id.*

An equitable relief from judgment in accordance with Indiana Trial Rule 60(B) can only be obtained in very specific circumstances:

> On motion and upon such terms as are just the court may relieve a party or his

legal representative from an entry of default, final order, or final judgment, including a judgment by default for the following reasons:

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . .

A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

■ Even though, at first glance Indiana Trial Rule 59 and 60 appear to be a perfect continuation of one another—if evidence cannot be discovered within the initial thirty-day period of T.R. 59, a motion pursuant to T.R. 60 can be initiated-our case law has decided otherwise. It is firmly established that a motion for relief from judgment under T.R. 60(B) may not be used as a substitute for a direct appeal based upon a timely motion to correct errors under T.R. 59. *See Snider v. Gaddis*, 413 N.E.2d 322, 324 (Ind.Ct.App.1980); *Toller v. Toller*, 176 Ind.App. 322, 375 N.E.2d 263, 265 (1978); *Moe v. Koe*, 165 Ind.App. 98, 330 N.E.2d 761, 765 (1975); *Warner v. Young America Volunteer Fire Dept.*, 164 Ind.App. 140, 326 N.E.2d 831, 834 (1975). Neither can a T.R. 60(B) motion be employed to revive an expired attempt to appeal. *York v. Miller*, 167 Ind. App. 444, 339 N.E.2d 93, 95 (1975). The proper function of a T.R. 60(B) motion is to afford relief from circumstances which could not have been discovered during the thirty day period in which a T.R. 59 motion

to correct errors could have been filed with the trial court. *Snider*, 413 N.E.2d at 324.

In *Warner*, 326 N.E.2d at 834, we stated that

[T.R.] 60 permits an attack on a judgment by motion, and an appeal following the ruling on the motion. However, the relief afforded by Section B of this rule is not a substitute for a timely appeal. Our research does not disclose an Indiana case so holding, but the language of the rule itself indicates such an intention. Subsection (2) of Section (B) provides: (2) any ground for a motion to correct error, including without limitation newly discovered evidence, *which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59.*

[Thus,] [o]ne cannot sit idly by and let the time for appeal elapse, thereafter file a 60(B) motion and thereby revive his expired remedy on appeal. This is reasonable and logical, and we believe we should so interpret our [T.R.] 60(B).

■ In the present case, the trial court issued its judgment on the jury's verdict on December 20, 2004. On January 19, 2005, Speedway filed its T.R. 59 motion to correct error asserting that "testing the clothing will lead to newly discovered and very important evidence." (Appellant's App. p. 682). However, the motion itself did not specify exactly what the new evidence was, solely that new evidence would be discovered sometime in the future after testing the stained jeans and boots. The record reflects that testing was not conducted until March 22 and March 23, 2005, with a formal written report prepared and signed on April 18, 2005. Approximately ten days later, on April 27, 2005, Speedway filed its Verified Motion in Support of its Motion for New Trial pursuant to T.R. 60(B)(2). In its T.R. 60(B)(2) motion, Speedway requested

the trial court to mandate a new trial as testing revealed that the jeans were manufactured ten months after the incident and the jeans did not contain any evidence of diesel fuel.

The evidence before us establishes that, acting diligently, the newly discovered evidence disclosed in Speedway's T.R. 60(B)(2) motion could reasonably have been discovered within thirty days after entry of judgment. At the time the clothing was introduced at trial, Speedway was well aware that it had access to testing which would establish whether the stains on the jeans contained diesel fuel. In particular, Speedway's counsel stated that "[s]o we'd have a chance to look at it and, specifically had it been produced, we could have, at some point, tested them. There is a test for diesel fuel we've used before." (Tr. p. 329).

During the hearing on Speedway's T.R. 60(B)(3) motion, held on September 2, 2005, Robert Moss (Moss), Speedway's expert who conducted the diesel fuel test, testified during cross-examination as follows:

[Holmeses' counsel]: Would it have been possible for you to have done this testing and come up to the same conclusions in December of 2004?

[Moss]: Yes.

[Holmeses' counsel]: You got the tests—you got the jeans on March 11 and the testing shows that it was done on March 23. Would it have taken any longer than three weeks for you to get the test results back to the one requesting the test results?

[Moss]: Probably a—no, it depends on the workload in the laboratory at the time. But typically time is in that time frame.

(Appellant's App. pp. 590–91).

Similarly, the label information used to discover the jeans' manufacturing date was available for examination at the time the jeans were introduced at trial. Nonetheless, Speedway waited until April 25, 2005 to gather the information, with results being available twenty-four to forty-eight hours later.

Thus, although it is clear from the testimony before us that Speedway's new evidence was capable of being discovered within 30 days after the judgment, Speedway exercised absolutely no due diligence in attempting to obtain it. First, by choosing not to object to its introduction or request a continuance to test the jeans, Speedway made a conscious decision to take its chances with the jury without the evidence it now deems crucial for the administration of justice. Furthermore, Speedway waited until the 30th day after trial to request leave to perform the testing even though its counsel had stated to the trial court thirty-five days earlier that not only did the test exist, it had been used before. By waiting until the last day to file a motion to correct errors, Speedway failed to conduct itself diligently and failed to establish that if it had filed its motion immediately following the jury's verdict, that it would not have been possible to obtain the newly discovered evidence within the time frame of a motion to correct error.

Because we conclude that the newly discovered evidence was capable of being discovered within thirty days after entry of judgment, a motion to correct error pursuant to T.R. 59 is a jurisdictional prerequisite. *See* T.R. 59. As Speedway's T.R. 59 motion filed January 19, 2005, merely contained a preview of things to come but did not include the actual newly discovered evidence, the trial court properly denied Speedway's motion. As we also find that this newly discovered evidence could have been discovered, if pursued diligently,

within thirty days of entry of judgment, Speedway cannot avail itself of a T.R. 60(B)(2) motion to revive its expired remedy of appeal. *See Snider,* 413 N.E.2d at 326. Accordingly, the trial court properly denied Speedway's Motion for New Trial, filed April 27, 2005.

### III. *Indiana Trial Rule 60(B)(3)*

On June 14, 2005, Speedway filed its final motion for relief from judgment, which was subsequently denied by the trial court on September 27, 2005. Instead of newly discovered evidence, this motion was based upon alleged misrepresentations made by the Holmeses during their trial testimony. Specifically, Speedway points to Gerald and Madeline's statements regarding the staining of the jeans. In fact, in a side-by-side comparison, we note that Speedway's T.R. 60(B)(2) motion and T.R. 60(B)(3) motion refer to the manufacturing date of the jeans and the chemical composition of the stains on the jeans. Both motions quote the same testimony from Gerald and both motions contain some of the same excerpts of the trial transcript. In essence, we are forced to agree with the Holmeses that "Speedway merely repackaged its [T.R. 60(B)(2)] motion for relief from judgment based on newly discovered evidence in allegations that Gerald and Madeline misrepresented facts at trial." (Appellees' Br. p. 23).

The Indiana Rules of Procedure are to be construed in a manner promoting the just, speedy, and inexpensive determination of every action. *See* T.R. 1. A party may not file repeated T.R. 60 motions until he finally either offers a meritorious ground for relief or exhausts himself and the trial court in the effort to do so. *Carvey v. Ind. Nat. Bank,* 176 Ind.App. 152, 374 N.E.2d 1173, 1177 (1978). In discussing strict adherence to our rules of procedure and the exceptional circumstances that occasionally warrant deviation there-

from, our supreme court stated in *Soft Water Utilities, Inc. v. LeFevre,* 261 Ind. 260, 301 N.E.2d 745, 750 (1973):

> Certainly, the orderly procedure of our judicial system calls for adherence to rules designed to achieve that goal. But we should never ignore the plain fact that the consequence of strict adherence to procedural rules may occasionally defeat rather than promote the ends of justice ...

This court's position in *Carvey* was recently reiterated by our supreme court in *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332, 339 (Ind.1983) cautioning parties that "[w]e do not wish to encourage defendants to hastily file a Rule 60(B) motion as soon as they discover one ground for relief under the Rule and then take their time about discovering and raising other Rule 60(B) grounds and bombarding the court with more such motions."

The basis of Speedway's T.R. 60(B)(3) motion is the Holmeses' alleged misrepresentation concerning the manufacturing date and wear and tear of the jeans. However, as we stated above, the jeans' manufacturing date was discoverable almost immediately upon offering the jeans into evidence. With respect to the stain on the jeans, we determined that, upon due diligence, expert evidence was available within thirty days after entry of the judgment to establish that no diesel fuel had ever come in contact with the trousers. Speedway failed to present any evidence to this court that it could not have discovered this evidence in time to file a motion to correct error as required by T.R. 60(B)(2).

Accordingly, as we discourage parties to file successive T.R. 60(B) motions, here, Speedway did not convince this court that exceptional circumstances existed to warrant elevation of substance over form. *See Carvey,* 374 N.E.2d at 1177; *Soft Water Utilities, Inc.,* 301 N.E.2d at 750. In es-

sence, we do not allow parties to make strategic decisions only to attempt to relitigate issues after those strategic decisions go awry without a showing that the matter raised in the successive motions was unknown and unknowable at the time of the first motion for relief from judgment. Thus, we find that the trial court properly denied Speedway's T.R. 60(B)(3) motion.[2]

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Speedway's successive motions for relief from judgment.

Affirmed.

MAY, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting.

I respectfully dissent because I believe this is a clear case for relief under Indiana Trial Rule 60(B)(3), but that the majority has elevated form over substance, and imposed an onerous burden upon Speedway to anticipate and respond to specious conduct by the Holmeses. The majority essentially decides that, because Speedway failed to ferret out the exact nature of the alleged fraud and so advise the trial court within thirty days under the newly discovered evidence provision of Trial Rule 60(B)(2), its right to claim fundamental unfairness of the proceedings is forfeited. The practical import is: if the wrongdoer is adept at concealment, and thirty days pass silently after trial, he is rewarded for his conduct. However, our Supreme Court has specifically rejected a "gaming view of the legal system," *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind.1999), and

the Holmeses should not be rewarded for such.

Nor do I believe that Speedway's decision to seek relief under Indiana Trial Rule 60(B) as opposed to perfecting a direct appeal on the merits should divest Speedway of the opportunity to challenge fraud. A Trial Rule 60 motion may not be used as a substitute for a direct appeal. *See Snider v. Gaddis*, 413 N.E.2d 322, 324 (Ind.Ct.App.1980). However, in this case an appeal on the merits would have been futile, as the problem is not a lack of evidence on the elements of negligence or an error of law. Rather, the problem is that the evidence may be fraudulent. The equitable remedy of Trial Rule 60(B)(3) is designed to address this situation.

Moreover, I am not convinced that a party who claims misconduct under these circumstances must also meet the extensive criteria applicable to newly discovered evidence under Trial Rule 60(B)(2). The evidentiary burden for a successful Trial Rule 60(B)(3) motion was recently explained in *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65 (Ind.2006). Trial Rule 60(B)(3) creates a limited exception to the general rule of finality of judgments, enabling a court to grant relief from an otherwise final judgment due to fraud, misrepresentation, or misconduct of an adverse party. *Id.* at 72–73. "Misconduct" under this Rule can be based on either unintentional or intentional conduct. *Id.* at 73. In order to obtain a new trial for misconduct, Speedway is required to show: (1) the Holmeses committed either fraud, negligent misrepresentation, or misconduct; (2) the fraud, misrepresentation, or misconduct prevented Speedway from fully and fairly presenting its case at trial; and (3) Speedway has made a prima facie showing of a meritorious defense as to

---

**2.** Because we affirm the trial court's exercise of discretion in denying Speedway's successive post-trial motions, we do not need to reach the Holmeses cross-appeal.

liability or that the damages were excessive. *See id.* at 74.

This case is a prime example of such misconduct and ensuing prejudice. During pretrial discovery (the appropriate time to prevent "trial by ambush" in accordance with the Indiana Rules of Trial Procedure), the jeans were not to be found. They mysteriously appear at the eleventh hour and represent the sole piece of physical evidence before the jury to support Gerald Holmes' claim of a slip and fall on diesel fuel.

At this juncture, it would have behooved Speedway to ask for a continuance to obtain testing of the substance thereon (in addition to interposing their objection). Speedway was on notice that the identity of the substance was a contested issue. However, I cannot agree that it was incumbent upon Speedway to somehow suspect that the evidentiary exhibit was wholly fabricated because the manufacture and sale of the particular jeans post-dated the incident. It is not beyond the realm of experience that crucial evidence could be fabricated. However, I do not believe that litigants should be ever vigilant to suspect that physical exhibits are so produced or risk waiver. Nor should trial courts be expected to routinely interrupt proceedings so that every physical exhibit can be challenged for fraud. Trial Rule 60(B)(3) exists so that the presumably rare cases of fraud may be attacked through post-trial equitable proceedings.

The practical effect of the majority decision is that the Holmeses are rewarded, at worst for fraud, and at best for a lack of diligence in making crucial evidence available. Meanwhile, Speedway's perceived lack of diligence has resulted in the denial of all post-trial relief and the affirmation of an order that it pay more than half a million dollars. For these reasons, I

would reverse the denial of equitable relief and remand for a new trial.