Robert Lee FULTON, Administrator of the Estate of Martin E. Mulkey, Appellant (Defendant Below),

v.

John D. VAN SLYKE, Administrator of the Estate of Dolphy W. Van Slyke and Virginia Van Slyke, Deceased, Appellee (Plaintiff Below).

No. 4–1281A196.

Court of Appeals of Indiana, Fourth District.

April 12, 1983.
Rehearing Denied May 10, 1983.

Plummer Tiede Magley Metz & Downs, Alfred H. Plummer, III, Wabash, for appellant.

McCallen, Fisher & Ireland, Alan J. Zimmerman, Wabash, for appellee.

MILLER, Judge.

This is an appeal from a ruling made by the trial court in an estate matter wherein the court granted the motion of a claimant to reinstate his claim against the estate. The claimant, John Van Slyke, acting as the administrator of the Arkansas estate of Dolphy Van Slyke, based his claim against the estate of Martin Mulkey, Robert Fulton, administrator, [Estate] on a lawsuit and

judgment obtained against Mulkey in Arkansas which lawsuit alleged Mulkey caused the death of Dolphy Van Slyke in an automobile accident. At the time set for hearing on Van Slyke's claim, no counsel appeared for Van Slyke, and the court entered judgment for the Estate. Eventually, however, the claim was reinstated after two Ind.Rules of Procedure, Trial Rule 60(B) motions had been filed by Van Slyke and considered by the court. The Estate now claims the court erred in reinstating the claim for the following reasons: 1) the second T.R. 60(B) motion was repetitious and therefore should have been rejected by the court under the rule set out in *Carvey v. Indiana National Bank,* (1978) 176 Ind.App. 152, 374 N.E.2d 1173; and 2) the evidence before the court was insufficient to support any ground under T.R. 60(B), and therefore reinstatement was an abuse of discretion.

We find the trial court did not err in reinstating the claim and affirm.

## FACTS

According to the claim filed by Van Slyke, an automobile accident occurred in Arkansas on July 4, 1979 when Mulkey's vehicle was racing on the wrong side of the road and crashed into a truck driven by Dolphy Van Slyke. Mulkey, Dolphy Van Slyke and his wife, Virginia, were killed, and the Van Slyke's 12-year-old daughter was injured. On December 12, 1979, John Van Slyke filed his claim of $504,184[1] against the Estate attaching his complaint in the then pending Arkansas tort litigation as the basis for his claim. Only the names of the parties appeared on the face of the claim. However, the names and addresses of Arkansas counsel appeared on the at-

tached complaint. The unpaid claim, having been neither allowed nor disallowed by administrator Fulton, was filed as a civil case with a new cause number on June 9, 1980.[2] No further action was taken in the matter until October 14, 1980, when the trial court set the civil cause for a hearing on dismissal (call of the docket) under Ind. Rules of Procedure, Trial Rule 41, with notice directed to be sent to "counsel of record." Local counsel for Van Slyke, attorney Richard Fisher, had not yet filed an appearance under the civil cause number. However, on October 31, 1980, the cause was returned to active status "[o]n motion of administrator" (the court did not disclose which administrator made the motion).

Shortly thereafter, in December, 1980, the matter was set for trial for February 2, 1981, again with "[n]otice ordered to counsel." Van Slyke's local counsel, Richard Fisher, still had not filed his appearance. At trial on February 2, 1981, when no one appeared for Van Slyke to prosecute the claim, the court took the following action: "The defendant-administrator appears by A.H. Plummer. Plaintiffs [sic] fail to appear. Claimants [sic] are called and defaulted. The court now denies plaintiff's claim. Removed from active file." Apparently, attorney Fisher was informed of the court's action and on February 18, 1981, filed an unverified motion to set aside the judgment alleging both he and the Arkansas attorney had searched their files and found no written notice of the February 2nd trial date. In his motion, Fisher reminded the court he had acted promptly earlier in the proceedings when, after receiving information of possible dismissal on October 14, 1980, he caused the matter to

---

1. According to an affidavit filed in the course of the reinstatement proceedings, the Arkansas litigation resulted in a judgment of $194,400 against the Estate which has been satisfied to the extent of $51,000.

2. Ind.Code 29–1–14–10 provides in part as follows:

   "(a) On or before five (5) months and fifteen (15) days after the date of the first published notice to creditors, the personal representative shall allow or disallow each claim filed within five (5) months after the

date of the first published notice to creditors by making appropriate notations on the margin of the claim and allowance docket showing the action taken as to each claim. If a personal representative determines that he should not allow any claim in full such claim shall be noted 'disallowed.' All claims which are disallowed, or which are neither allowed nor disallowed within five (5) months and fifteen (15) days, shall be transferred at once to the issue docket for trial. . . ."

remain on the active docket. This motion to set aside the judgment, which had no supporting affidavits or documents, was denied on March 20, 1981, after a hearing at which Fisher presented no evidence for Van Slyke. On February 26, 1981, Fisher filed his formal appearance under the civil cause number and, on April 14, 1981, filed a second motion to set aside the judgment which motion was verified and supported by affidavit. In this second motion, Fisher alleged excusable neglect.

Fisher testified under oath at the hearing on the second motion, and gave the following testimony: He filed a request for notice of proceedings under the estate cause number[3] on July 7, 1980 (after the civil cause number was assigned). Both the Arkansas attorneys and Fisher thought that Fisher was protected and would be getting notice. Before Fisher filed the first motion to set aside the judgment, he called the Arkansas counsel's secretary, who assured Fisher that Arkansas counsel had not received notice of the trial. Relying on this information, Fisher mistakenly stated in his first motion that a search of the files revealed no notice had been received by either attorney. In preparing for the first hearing, Fisher asked the Arkansas attorney to execute an affidavit stating he did not receive notice. While Fisher was on vacation, the Arkansas attorney wrote a letter acknowledging he had, in fact, received notice of the February trial date but explaining he had taken no action because he presumed Fisher had also received notice. This correspondence was placed in the case file by Fisher's secretary. At the first hearing on March 20, after giving opening argument and during opposing counsel's argument, Fisher opened the file and viewed for the first time the letter from Arkansas admitting receipt of notice. Because of the contents of that letter, Fisher did nothing further at the hearing but, upon leaving the courtroom, wondered what obligation he had to advise the court that the grounds for his motion were not accurate.

After hearing the above explanation, the trial court, in fact, made no ruling on the second T.R. 60(B) motion but reconsidered its decision on the first motion and granted it, thereby reinstating the claim.[4] The Estate then perfected this appeal.

## DECISION

### Repetitious T.R. 60(B) Motions

The Estate alleges the trial court erred in reinstating Van Slyke's claim after the hearing on Van Slyke's *second* T.R. 60(B) motion. It claims, and we think correctly so, that the bases of the reinstatement were the allegations and the evidence given in support of the second T.R. 60(B) motion. We therefore address the issue raised by the Estate of whether such consideration of the second T.R. 60(B) motion was a violation of the rule set out in *Carvey v. Indiana National Bank, supra,* wherein Judge Lowdermilk stated a general proposition that: "[a] party may not file repeated TR. 60 motions until he finally either offers a meritorious ground for relief or exhausts himself and the trial court in the effort to do so." *Id.* at 159, 374 N.E.2d at 1177. However, Judge Lowdermilk also indicated this

---

3. Ind.Code 29–1–7–6(a) provides:
   "At any time after the issuance of letters, any person interested in the estate may serve upon the personal representative, or upon his attorney, and file with the clerk of the court where the proceedings are pending with a written admission or proof of such service, a written request, stating that he desires written notice by ordinary mail of the time and place of all hearings on the settlement of accounts, on final distribution, and on any other matters for which any notice is required by law, by rule of court, or by an order in the particular case. The applicant for such notice must include in his written request his post office address or that of his attorney. Unless the court otherwise directs, upon filing such request such person shall be entitled to notice of all hearings for which any notice is required as aforesaid, or of such of those hearings as he designates in his request."

4. The court also overruled the Estate's Motion to Strike Van Slyke's second T.R. 60(B) motion. The Estate claimed the second motion was repetitive and its consideration prohibited by the language in *Carvey v. Indiana National Bank, supra.*

general procedural rule should not be routinely applied, and the trial court retains discretion to allow a *second* T.R. 60 motion for equitable reasons. The *Carvey* court did, in fact, reverse the trial court holding it abused its discretion in failing to grant the second T.R. 60 motion.

Very recently, our supreme court in *Seibert Oxidermo, Inc. v. Shields,* (1983) Ind., 446 N.E.2d 332 (on rehearing, earlier decision withdrawn) addressed the foregoing rule expressed in *Carvey.* In *Seibert* the court finally settled the question of the proper procedure to be followed in attempting to set aside the default judgment entered pursuant to Ind.Rules of Procedure, Trial Rule 55. The court held that a T.R. 60(B) motion, rather than a T.R. 59 Motion to Correct Errors, is the proper motion even if filed during the 60 days following judgment. In the course of reaching this decision, the supreme court noted that "it seems Oxidermo's strategy was to keep filing Rule 60(B) motions, each time reasserting the 'excusable neglect' argument plus adding new grounds as well with each motion." *Seibert Oxidermo, Inc. v. Shields, supra,* at 338. Justice Givan then stated as follows:

"Shields cites the case of *Carvey v. Indiana National Bank,* (1978) 176 Ind. App. 152, 374 N.E.2d 1173, in support of his argument. In that case the Court of Appeals said: 'A party may not file repeated TR 60 motions until he either offers a meritorious ground for relief or exhausts himself and the trial court in an effort to do so.['] *Id.* at 159, 374 N.E.2d at 1177.

Oxidermo points to other language in the *Carvey* case indicating error alleged in a second Rule 60(B) motion may be considered in an appeal if the grounds for that additional error were unknown and unknowable to the movant at the time he made the first Rule 60(B) motion. Oxidermo asserts that is the case with the second and third Rule 60(B) motions it made in this case.

We see nothing in Oxidermo's second and third Motions to Set Aside Default Judgment that would permit an application of the exception set forth in *Carvey,* *supra.* The additional grounds for relief alleged by Oxidermo in the second and third motions were either discoverable at the time the first Rule 60(B) motion was filed or related to an alleged substantive defense available to Oxidermo, that there was no proof Shields' injuries were caused by use of Oxidermo's defective product. Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant. *See, e.g., Stewart v. Hicks,* (1979) Ind.App., 395 N.E.2d 308. Thus, the question of a lack of causation between plaintiff Shields' injuries and defendant Oxidermo's conduct would not have been a proper subject for consideration even in Oxidermo's first Rule 60(B) motion.

The issue of excessiveness of damages was not raised until the second Rule 60(B) motion was filed. We see no reason why it could not have been raised in the first Rule 60(B) motion. Rule 60(B)(2) provides the motion to set aside a default judgment may be based on 'any ground for a motion to correct error....' Rule 59(A)(3) states one basis for a motion to correct error is '[e]xcessive or inadequate damages....' Thus Oxidermo could have alleged the damages awarded were excessive in the June 28 Rule 60(B) motion. We conclude the Court of Appeals erred in addressing the issue of damages at all in its opinion in this case when the only errors saved for appeal were those raised in the first Rule 60(B) motion and the accompanying Rule 59 motion.

We must also observe that to sanction the repetitive filing of Rule 60(B) motions by a party suffering a default judgment is to encourage defaulted defendants to drag their feet and be dilatory in discovering grounds for setting aside a default judgment. Where the grounds for the Rule 60(B) motion are covered in subparagraphs (1) through (4) of Rule 60(B), the party has up to one year from the date of the entry of default or grant of default judgment to make such motion.

Ind.R.Tr.P. 60. We do not wish to encourage defendants to hastily file a Rule 60(B) motion as soon as they discover one ground for relief under the Rule and then take their time about discovering and raising other Rule 60(B) grounds and bombarding the court with more such motions."

*Seibert Oxidermo v. Shields, supra,* at 338–39.

Since our supreme court in *Seibert* has approved the rule and its exception as expressed in *Carvey* and in doing so used language which might be read to imply that an issue, if known or discoverable at the time of the first T.R. 60(B) motion, is waived if not included in such first motion, it is incumbent upon us to carefully examine the facts of *Carvey* to determine if Van Slyke did, indeed, fall within the exception.

In *Carvey,* attorney-defendant Carvey did not become aware of the full implications of the facts known to him when he filed his first T.R. 60 motion until after the filing of such motion, and our court concluded it would be inequitable to deny him the opportunity to explain his failure to include the appropriate grounds for reinstatement in his first motion. According to the facts presented to the trial court at the hearing on the second T.R. 60(B) motion, Carvey, along with seven others, guaranteed a note executed by a company which later became bankrupt. The holder of the note, Indiana National Bank, through its attorneys Hulett, Morgan, and McClarnon, negotiated with Carvey concerning his liability and, during the negotiations, indicated both Carvey would be liable for only his pro rata share of the obligation and, further, that a suit on the note to be filed later in which Carvey would be a named defendant was only for the purpose of pursuing the uncooperative guarantors. After Indiana National filed suit and Carvey was joined with the other guarantors, Indiana National moved for default judgment against Carvey. Carvey then filed his late answer without leave of court, spoke with attorney Morgan and was assured he was no longer in default. Relying on Morgan, Carvey did not appear at the default hearing but attorney McClarnon did, and obtained a default judgment against Carvey for the *full* amount of the note plus $9,000 in attorneys fees. Attorney Morgan then informed Carvey that the default judgment would not have been obtained if attorney McClarnon had known the true facts and, apparently, this misrepresentation lured Carvey into a perfunctory T.R. 60(B) motion (claiming only that he had filed an answer and was not in default) under the justified belief his motion would not be contested by Indiana National as the motion was merely to correct an inadvertent default entry. But, Indiana National did contest the motion and it was denied by the trial court perhaps under the theory that merely filing a tardy answer does not relieve a party from his default position.[5] Carvey then filed his second T.R. 60(B) motion setting forth in detail the negotiations with Indiana National Bank and his reliances on the bank's alleged misstatements. The trial court denied this second motion although the facts alleged with respect to the negotiations with and representations of the bank's counsel were not refuted. On appeal, this court found an abuse of discretion by the trial court in failing to set aside the default.

The holding in *Carvey,* where grounds were known, but not revealed in the initial T.R. 60(B) motion, is clear. It stands for the proposition that, while repeated T.R. 60(B) motions are not favored, a second T.R. 60(B) motion can be considered by the trial court if it presents facts which reveal proper grounds, although known or discoverable, were not alleged in the first motion because of fraud, mistake, surprise or excusable neglect. Our analysis of the *Carvey* decision, where this court approved Carvey's explanation of his failure to include appropriate grounds in his first

---

**5.** "Insofar as Carvey's motion implies that the filing of a tardy answer automatically removes a defendant from a state of default, it is errone-

ous." *Carvey v. Indiana National Bank, supra* at 158, 374 N.E.2d at 1177.

T.R. 60(B) motion, is supported by language in *Seibert,* wherein the court commented, in discussing the failure of Seibert Oxidermo to raise an issue until the second 60(B) motion was filed, as follows: "We see no reason why it could not have been raised in the first Rule 60(B) motion." *Seibert Oxidermo, Inc. v. Shields, supra,* at 338. Such language suggests to us that our supreme court recognizes the *Carvey* exception as including a situation wherein an initial failure to raise an issue is explained in a subsequent T.R. 60(B) proceeding.

■ Returning to the case before us, we find the facts, like the facts before the *Carvey* court, do not lend themselves to a routine application of a procedural rule. Attorney Fisher's first motion claimed neither he nor the Arkansas counsel received notice of the trial date. This assertion was based on information obtained by the use of reasonable diligence from the Arkansas counsel's office. The second motion, on the other hand, acknowledged that Arkansas counsel had in fact received notice and based its request for reinstatement on the new grounds of mistake, surprise or excusable neglect. Thus, the second motion was not repetitive in that it asserted facts and circumstances about which attorney Fisher was unaware, innocently, at the time he filed his first motion. Further, Fisher alleged in the second motion and established by his unrefuted testimony that he had filed a request for notice of proceedings in the estate under the provisions of IC 29–1–7–6, and believed such request entitled him to notice of the hearing on the claim. We, therefore, conclude that Fulton's second motion fell within the exception enunciated in *Carvey* and the court did not abuse its discretion in fixing a hearing thereon and reconsidering its earlier denial of the reinstatement.[6]

*Sufficiency of the Evidence Supporting Reinstatement*

■ Next, the Estate alleges the trial court abused its discretion in reinstating the cause, claiming the record did not support such action. We must first observe that the action taken by the trial court in denying the claim when Van Slyke failed to appear at the hearing was, in legal effect, a dismissal under the provisions of the Indiana Probate Code IC 29–1–14–12(b) which provides:

"*If any claimant fails to attend and prosecute his claim at the time the same shall be set down for trial, the court shall dismiss the claim;* and any subsequent prosecution of the claim against the estate shall be at the costs of the claimant, unless good cause for such failure to prosecute be shown.*"* (Emphasis added.)[7]

We further observe that neither dismissals nor defaults are favored in Indiana. In *Chrysler Corp. v. Reeves,* (1980) Ind.App., 404 N.E.2d 1147, Judge Young discussed this district's views on defaults and dismissals with prejudice for failure to comply with discovery type orders. He cited the following language from *Edgar v. Slaughter,* (8th Cir.1977) 548 F.2d 770:

**6.** For examples of cases from other jurisdictions where the courts have reviewed, on their merits, second motions to vacate judgments, see *Union Storage & Transfer Co. v. Smith,* (1953) 79 N.D. 605, 58 N.W.2d 782; *Fogel Refrigerator Co. v. Oteri,* (1959) 398 Pa. 82, 156 A.2d 815; *Davis v. Interstate Motor Carriers Agency,* (1970) 85 S.D. 101, 178 N.W.2d 204.

**7.** Another provision of our Probate Code, Ind. Code 29–1–14–13 provides that the trial of claims "shall be conducted as in ordinary civil cases...." This language has been construed as requiring the application of the general rules of civil procedure in the trial of a claim, *Russell v. McKinstry,* (1949) 119 Ind.App. 625, 86 N.E.2d 711, unless such procedural rules conflict with specific provisions in the Probate Code, *James C. Curtis & Co. v. Blume,* (1944) 114 Ind.App. 675, 53 N.E.2d 549. Under our rules of civil procedure, Ind.Rules of Procedure, Trial Rule 41(E), a dismissal against the plaintiff for failure to comply with the rules or when no action has been taken in a civil case for a period of 60 days must be preceded by a hearing, *Rumfelt v. Himes,* (1982) Ind., 438 N.E.2d 980. Here the trial court gave no reasons for setting aside the dismissal and it may be it considered the dismissal as having been precipitantly entered and contrary to the holding in *Rumfelt v. Himes, supra.* We need not address this issue, which was not argued by the parties, as we uphold the trial court's action on other grounds.

"This balance recognizes that a trial judge should have wide latitude in controlling pretrial discovery orders and should seek compliance with his orders. But this balance also recognizes that in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied."

*Chrysler Corp. v. Reeves, supra* at 1153. In reversing the trial court's default judgment entered pursuant to Ind.Rules of Procedure, Trial Rule 37 he noted in a footnote "[t]hat is to say, based on a weighing of these policies the sanction of default or dismissal is never appropriate without entry of a lesser sanction first." *Id.* at 1154.

In *Breedlove v. Breedlove,* (1981) Ind. App., 421 N.E.2d 739 Judge Shields, speaking for the court, stated:

"The sanction of dismissal or default is obviously more drastic and severe than other available sanctions. Because the law favors the disposition of cases on their merits, *the imposition of these sanctions is appropriate only under limited circumstances or in extreme situations.* Where an alternative less drastic sanction would be effective it must be utilized." (Emphasis added.)

*Id.* at 742. The court in *Breedlove* affirmed the trial court's default judgment but only after examining the record and observing *numerous instances* where the defendant defied and disobeyed the trial court's orders.

█ It is thus settled in this jurisdiction that lesser sanctions should be imposed on parties unless there has been contumacious disregard of the court or lesser sanctions have not been effective. For example, in *Farinelli v. Campagna,* (1975) 166 Ind.App. 587, 338 N.E.2d 299, the case was over four and one-half years old, there had been repeated failures to obey discovery orders, the plaintiff had not supplied the names of doctors to be used as witnesses and the plaintiff had not even listed the charges of negligence he planned to litigate. When the court ordered a statement of the alleged negligent conduct of the defendant and a list of medical witnesses be furnished, the plaintiff furnished various allegations of misconduct but for the list of witnesses attached only a "photocopy of five pages from the yellow page section of the telephone directory listing the names of some three hundred nine physicians" noting plaintiff would be able to select from this list. *Id.* at 596, 338 N.E.2d at 305. After considering the entire record and circumstances our court held the trial court did not abuse its discretion by dismissing the suit. Nevertheless, we stated the severity of this sanction "should not be lightly indulged in," and concluded under different circumstances a lesser sanction would have sufficed. *Id.* at 594, 338 N.E.2d at 304.

More directly on point are federal cases where the plaintiff has failed to appear at trial and the courts have held reinstatement was appropriate unless there were repetitive failures to appear or other aggravating factors to warrant dismissal. *Ali v. A & G Co., Inc.,* (2nd Cir.1976) 542 F.2d 595; *Coon v. Charles W. Bliven & Co., Inc.,* (5th Cir.) 534 F.2d 44 *cert. den.* (1976) 429 U.S. 980, 97 S.Ct. 491, 50 L.Ed.2d 588. *See also Bush v. United States Postal Service,* (4th Cir.1974) 496 F.2d 42. See generally, Annot., 20 A.L.R. FED 488 (1974); 5 J. Moore, Moore's Federal Practice ¶ 41.11[2] (2d ed. 1976). In *Bush* the court reviewed recent decisions concerning the authority of district courts to dismiss an action for want of prosecution under Fed.R.Civ.P. 41(b) as follows:

"A district court unquestionably has authority to grant a motion to dismiss for want of prosecution. Fed.R.Civ.P. 41(b). Indeed, as the Supreme Court held in *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the trial court can take such action on its own motion. But courts interpreting the rule uniformly hold that it cannot be automatically or mechanically applied. Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits. See generally, Wright & Miller, Federal Practice and Procedure: Civil §§ 2369, 2370 (1971). Consequently, dismissal 'must be tempered by a careful exercise of judicial

discretion.' *Durgin v. Graham,* 372 F.2d 130, 131 (5th Cir.1967). While the propriety of dismissal ultimately turns on the facts of each case, criteria for judging whether the discretion of the trial court has been soundly exercised have been stated frequently. Rightfully, courts are reluctant to punish a client for the behavior of his lawyer. *Edsall v. Penn Central Transportation Co.,* 479 F.2d 33, 35 (6th Cir.1973). Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked only in extreme circumstances. *Industrial Building Materials Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1339 (9th Cir. 1970). Indeed, it has been observed that '[t]he decided cases, while noting that dismissal is a discretionary matter, have generally permitted it only in the face of a clear record of delay or contumacious conduct by the plaintiff.' *Durham v. Florida East Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir.1967). Appellate courts frequently have found abuse of discretion when trial courts failed to apply sanctions less severe than dismissal. *See, e.g., Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir.1971); *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 887 (5th Cir.1968); *Dyotherm Corp. v. Turbo Machine Co.,* 392 F.2d 146, 148 (3d Cir.1968). And generally lack of prejudice to the defendant, though not a bar to dismissal, is a factor that must be considered in determining whether the trial court exercised sound discretion. *Pearson v. Dennison,* 353 F.2d 24, 28 (9th Cir.1965)."
*Bush v. United States Postal Service,* 496 F.2d at 44, *quoting Reizakis v. Loy,* 490 F.2d 1132 (4th Cir.1974).

■ In Indiana, judicial discretion has been defined as "a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable" *State ex rel. Thrasher v. Hayes,* (1978) 177 Ind.App. 196, 206, 378 N.E.2d 924, 930, and review of an exercise of judicial discretion must be made in light of and confined to the facts and circumstances of a particular case. The mere fact that the trial court might not have abused its discretion by denying a T.R. 60(B) motion does not mean that granting such motion constitutes an abuse of discretion. *First National Bank & Trust Co. of Crawfordsville v. Coling,* (1981) Ind.App., 419 N.E.2d 1326. We may say a trial court has abused its discretion only when the result it has reached is clearly against the logic and effect of the facts and circumstances which are before the court or the reasonable, probable, and actual deductions flowing therefrom. *Rose v. Rose,* (1979) Ind.App., 390 N.E.2d 1056. Thus, a trial court does not abuse its discretion in reinstating a cause after default "[a]s long as there is some inferential showing of excusable neglect, albeit slight...." *Henderson v. American Optical Co.,* (1981) Ind.App., 418 N.E.2d 549, 552.

■ In reviewing the use of discretion by this trial court, we recognize that generally the negligence of the attorney is imputed to the client, but the trial court may temper this rule where the facts and circumstances of the case warrant it. *Rose v. Rose, supra; Kreczmer v. Allied Construction Co.,* (1972) 152 Ind.App. 665, 284 N.E.2d 869; *see also Green v. Karol,* (1976) 168 Ind.App. 467, 344 N.E.2d 106. In *Green,* the summons and complaint were served on defendant Karol, and his attorney entered an appearance. In his T.R. 60(B) motion to set aside the default entry, Karol's counsel explained "[b]y reason of the press of business, preoccupation of Counsel therewith and the inadvertent scheduling of Karol's file, within Counsel's Office, the time for filing a responsive pleading and/or motion expired without knowledge of counsel." *Id.* at 474, 344 N.E.2d at 110. The acceptance of this conduct as excusable neglect was held not to be an abuse of discretion. In *Rose,* a dissolution of marriage action, the husband had hired a Kentucky attorney who promised to hire local counsel, but failed to do so. Although the Kentucky attorney received notice of the trial, he did not appear. Once again, this court found it was not an abuse of discretion to reinstate the case. And in *Kreczmer,* because the envelope with notice was placed in a file

without the attorney's knowledge, he failed to file his appearance. Our court again held it was not an abuse of discretion to reinstate the cause of action despite the negligence of the attorney. This same discretionary policy is followed in the federal courts. "Where, however, the failure to prosecute is solely to the gross neglect of plaintiff's counsel, and plaintiff is unaware of such neglect, dismissal with prejudice may be too harsh a sanction." 5 J. Moore, Moore's Federal Practice ¶ 41.11[2] (2d ed. 1976).

Finally, in reviewing the reinstatement of a cause of action our court has considered numerous justifying factors such as the substantial amount of money involved, the existence of a meritorious claim, the short length of time between the judgment and the request for relief, the presence of weighty policy determinations, and lack of prejudice to the defendant. *Henderson v. American Optical Co., supra; Carvey v. Indiana National Bank, supra; Green v. Karol, supra.* Many of these factors are present in this case—Van Slyke has an apparent meritorious claim based on a foreign judgment for the substantial amount of $143,000; only a 16 day period elapsed between the judgment and the initial attempt to set aside the judgment; the estate has not demonstrated any way in which it would be prejudiced by reinstatement. In addition, there is a strong judicial preference for deciding cases on their merits and for giving the litigants their day in court. *Chrysler Corp. v. Reeves, supra; Carvey v. Indiana National Bank, supra.* After considering the severity of the sanction which was not preceded by defiant or stubbornly disobedient conduct and the ample number of justifying factors as revealed in this record, we conclude the trial court did not abuse its discretion in allowing the claim to be set for a hearing on the merits.

Affirmed.

YOUNG, P.J., and CONOVER, J., concur.