Steven **WEINREB**, Appellant–Defendant,

v.

**TR DEVELOPERS, LLC, et al.,** Appellee–Defendant.

No. 49A05–1003–CT–152.

Court of Appeals of Indiana.

Feb. 18, 2011.

---

Jeffrey Kose, Raegan M. Gibson, James B. Chapman II, Benesch, Friedlander, Coplan & Aronoff, LLP, Indianapolis, IN, Lawrence C. Marshall, Stanford Law School, Palo Alto, CA, Attorneys for Appellant.

Karl L. Mulvaney, Thomas C. Scherer, Nana Quay–Smith, Whitney L. Mosby, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

After concluding that Appellant Steven Weinreb ("Weinreb") defaulted on a loan guaranty, the Marion Superior Court granted summary judgment in favor of the predecessor in interest to Appellee TR Developers. Weinreb filed a Trial Rule 60(B) motion and argued that his signature on the loan guaranty was forged. The trial court denied Weinreb's first Rule 60(B) motion, and Weinreb later filed a second Rule 60(B) motion alleging the same grounds for relief, plus an allegation of negligence of his original attorney and fraud on the part of an adverse party. Weinreb now appeals the trial court's denial of his second motion to set aside judgment pursuant to Trial Rule 60(B)(1), (3), and (8). Concluding that the trial court did not abuse its discretion when it denied Weinreb's second Trial Rule 60(B) motion because all of his alleged grounds for relief were known or knowable at the time of his first Trial Rule 60(B) motion, we affirm. We also remand this case to the trial court for a determination of whether TR Developers is entitled to an award of appellate attorney fees.

### Facts and Procedural History[1]

In 2007, WK Timber Ridge owned an apartment complex in Indianapolis,

Indiana. On or about May 31, 2007, National Consumer Cooperative Bank ("the Bank") loaned $4,000,000 to Timber Ridge for a debt refinancing. In consideration for the loan, Timber Ridge signed a promissory note and a mortgage, all of which were recorded on June 5, 2007. Two guaranties bearing Weinreb's signature were also executed on May 31, 2007. The first guaranty ensured Timber Ridge's performance of various obligations under the loan documents, and the second guaranty promised partial payment of the loan if Timber Ridge defaulted on its loan payments. Appellant's App. pp. 120–44. Specifically, the second guaranty provided that Weinreb would pay up to 50% of the loan's unpaid principal balance, plus all accrued, unpaid interest, late payment charges, and collection costs. Weinreb also executed an Environmental and Hazardous Substance Indemnification Agreement in connection with obtaining the loan.

The loan documents and guaranties were reviewed by Timber Ridge's attorney, who, in a May 31, 2007 letter to the Bank, stated:

> The execution and delivery by Guarantor of the Guaranties and the Environmental Indemnity and the performance of Guarantor's obligations under the Guaranties and the Environmental Indemnity have been duly authorized by all requisite action of Guarantor and the Guaranties and the Environmental Indemnity have been duly executed and delivered by Guarantor.

Appellant's App. p. 282. Timber Ridge's attorney also opined that "[t]he Loan Documents are the legal, valid and binding obligations of Borrower and Guarantor, re-

---

1. We heard oral argument in this case on January 10, 2011, in the Indiana Court of Appeals Courtroom. We thank counsel for their able advocacy.

spectively, enforceable against Borrower and Guarantor, respectively, in accordance with their respective terms[.]" *Id.*

The loan was also "conditioned upon receiving a guarantee [sic] from" Weinreb. *Id.* at 270, 274; *see also* Appellant's App. p. 176. The Bank "relied upon the Guaranties in entering into the Loan Documents with Timber Ridge." *Id.* at 176. Furthermore, "[i]n connection with the proposed financing by [the Bank], Weinreb provided [the Bank] with various personal financial information including a financial statement and tax returns." *Id.* at 270. Weinreb also executed a certification acknowledging his execution of the guaranties. *Id.* at 271, 278–79. The certification contains a provision stating:

> The undersigned has no actual knowledge of any misrepresentations, error, fraud or deceit by any parties to the loan documents ... executed by the Company or the Guaranties ... executed by the Guarantor in favor of [the Bank], a Federal Savings Bank ("Lender") in connection with a new mortgage loan from Lender to the Company in the principal amount of Four Million and 00/100 Dollars ($4,000,000.00).

*Id.* at 278.

On September 12, 2008, the Bank filed a complaint in Marion Superior Court alleging that Timber Ridge had defaulted on its loan payments. The Bank further alleged that its loan was secured by a promissory note, a mortgage, an assignment of leases and rents, and the two guaranties bearing Weinreb's signature. The Bank attached copies of all relevant, executed documents to its complaint. In their Answer, Timber Ridge and Weinreb asserted only a general denial to all of the allegations in the Bank's Complaint. *Id.* at 153.

On January 30, 2009, the Bank filed a motion for summary judgment. On motion of Timber Ridge and Weinreb, the trial court extended the deadline for their summary judgment response to April 6, 2009. However, Timber Ridge and Weinreb did not file a response or designation of evidence before the April 6, 2009 deadline. Two weeks later, they requested an additional enlargement of time to respond to the Bank's summary judgment motion. The Bank objected to the request for additional time to respond to its motion. A hearing was held on Weinreb's motion for extension of time and the Bank's summary judgment motion on May 13, 2009.

At the hearing, Weinreb's counsel argued that the parties had agreed to take the deposition of the Bank's chief financial officer, which he "thought operated as an agreement between the parties for an enlargement of time[.]" *Id.* at 202. The Bank's attorney stated that it had agreed to a date for the deposition but never had "any confirmation of that[.]" *Id.* at 203. The trial court observed that Weinreb and Timber Ridge were required to have filed a motion for further extension of time by April 6, 2009, and therefore, the court had no discretion to grant their motion, which was filed two weeks after that date. *Id.* at 201. At the hearing, Weinreb's counsel also asserted that Weinreb denied signing the guaranties. *Id.* at 200.

At the close of the hearing, the trial court concluded that Timber Ridge and Weinreb failed to make timely payments to the Bank and had breached the loan contract and guaranties. The trial court then granted the Bank's motion for summary judgment and entered judgment in favor of the Bank, together with a decree of foreclosure. Specifically, the trial court entered judgment in favor of the Bank and

> against Timber Ridge and Weinreb, jointly and severally, for damages:
>
> i. against Timber Ridge in the principal amount of $3,900,000.00, plus pre-

judgment interest through December 3, 2008 in the amount of $104,439.26 plus interest at the per diem rate of $476.67 from December 3, 2008 through the date of judgment, plus late charges in the amount of $7012.79, plus reasonable attorneys' fees and expenses in the amount of $39,141.42, plus post-judgment interest at the highest statutory rate until this judgment is satisfied; and

ii. against Weinreb, jointly and severally with Timber Ridge, in the principal amount of $1,950,000.00, plus prejudgment interest through December 3, 2008 in the amount of $104,439.26, plus interest at the per diem rate of $476.67 from December 3, 2008 through the date of judgment, plus late charges in the amount of $7,012.79, plus reasonable attorneys' fees and expenses in the amount of $39,141.42, plus post-judgment interest at the highest statutory rate until this judgment is satisfied.

Appellant's App. pp. 216–17. Importantly, neither Weinreb nor Timber Ridge appealed this judgment.

Instead, on June 12, 2009, Timber Ridge and Weinreb filed a Trial Rule 60(B) motion for relief from judgment. In that motion, Weinreb argued that he was entitled to relief from judgment because the Bank did not provide the court or their attorneys "with any original signatures on the documents attached to the Complaint for Foreclosure." Appellant's App. p. 221. Further affidavits were submitted in support of the motion from Julian Blumenthal, another Timber Ridge principal, and Weinreb, both averring that neither individual "executed the documents establishing the personal guaranty insuring the mortgage which is the subject of this case." *Id.* at 222. Despite claiming that he never executed the guaranties, Weinreb admitted, "[a]s a Member of the company, it was expected that I execute two guaranties, a Guaranty and a Limited Guaranty." *Id.* at 225.

On July 8, 2009, the trial court denied Timber Ridge's and Weinreb's first Trial Rule 60(B) motion. In its order, the court noted that Timber Ridge and Weinreb had failed to timely respond or designate any evidence in opposition to the Bank's motion for summary judgment. Furthermore, the court noted that Timber Ridge and Weinreb "never timely filed any responsive pleading or affidavit denying the execution of the documents [the Bank] attached to the complaint." *Id.* at 234. Finally, the court found:

15. Defendants' confusion or surprise regarding an enlargement of time does [not] establish grounds for T.R. 60(B) relief. While the Defendants may have been unsure as to whether [the Bank] objected to a deposition after April 6, 2009, the Defendants still had an obligation [to] file a motion for enlargement of time on or prior to April 6, 2009, to preserve their right to file a response to [the Bank's] Motion for Summary Judgment. The Defendants failed [to] comply with this requirement.

\* \* \*

17. Additionally, the affidavits do not meet the new evidence exception in T.R. 60(B)(2) as due diligence would have required that allegations regarding the authenticity of the "Guaranty" and "Limited Guaranty" be disclosed prior to the June 12, 2009 Motion. The Defendants have not shown that if they had used due diligence that they would not have been aware of the documents in question. In fact, the Defendants were aware of and had copies of these documents as they were attached to the complaint filed on September 12, 2008.

*Id.* at 234–35 (footnote omitted). Thereafter, on October 1, 2009, the Bank assigned the May 13, 2009 judgment to TR Develop-

ers, LLC, and TR Developers was substituted as a plaintiff in this cause.

On January 6, 2010, nearly five months after the trial court denied his first 60(B) motion, Weinreb filed a second Trial Rule 60(B) motion for relief from judgment, after employing new counsel. In the motion, Weinreb argued that he was entitled to relief from judgment because Weinreb had told his prior counsel that his signatures on the guaranties were forged and counsel failed to "take the appropriate steps to defend him from liability in conjunction with such Guaranties." *Id.* at 242. Weinreb also alleged that his counsel failed to inform him of the summary judgment entered against him, and that the first motion for relief from judgment was filed without his knowledge. Finally, Weinreb argued that the Bank committed fraud because Weinreb notified the Bank that his signatures on the guaranties were forgeries prior to the commencement of this action. In support of his motion, Weinreb submitted an affidavit, in which he averred:

> 3. On May 31, 2007, Timber Ridge allegedly took out a $4,000,000.00 loan ... with National Consumer Cooperative Bank [ ]. I did not sign any documents related to the origination of the Loan.
>
> 4. I never agreed to guaranty [sic] the liability of Timber Ridge. Further, I never signed any guaranty related to the Loan, nor did I have knowledge of, consent to, or ratify any other party to sign my name on any guaranty related to the Loan.

Appellant's App. p. 249. Weinreb also submitted the affidavit of a handwriting expert who, after reviewing documents purporting to contain Weinreb's authentic signatures, concluded that the signature on the guaranties was not Weinreb's signature. *Id.* at 256–57.

Weinreb also submitted his own, supplemental affidavit in support of his motion, which states in pertinent part:

> 2. I was unaware of the Financing Proposal [the Bank] introduced in support of its Opposition ... until after a default was declared on the Loan.
>
> 3. To explain my previous affidavit statement—that as a member of WK Timber Ridge, LLC it was expected that I execute the Guaranties—I was not aware of this expectation of [the Bank] until after the bank declared a default of the Loan.
>
> 4. I also became aware (again, after a default was declared on the Loan) that all of the principals of WK Timber Ridge, LLC (of which there are at least 3 members) had been expected to guaranty [sic] the Loan. This fact is evidenced in the Financing Proposal [the Bank] introduced in support of its Opposition[.]
>
> 5. I did not agree to and never guaranteed the Loan. I am unaware of any other principal of WK Timber Ridge, LLC executing any guaranty in connection with the Loan.
>
> 6. I did not provide [the Bank] with any personal financial information related to the Loan nor did I have knowledge of or consent to any other party providing [the Bank] with such information.
>
> 7. I did not execute the Certification ... nor did I have knowledge of, consent to, or ratify any other party to sign my name to the Certification.
>
> 8. I did not have knowledge of or approve the letter written by Backer & Backer, P.C.
>
> 9. Although I did discuss the loan modification with [the Bank], the forged Guaranties were never mentioned in these conversations.

10. I did not learn of the forged Guaranties until after the default of the Loan.

*Id.* at 305–06.

In its response to Weinreb's second 60(B) motion, TR Developers submitted the affidavit of Mark Hiltz, the Chief Risk Officer of the Bank, who averred:

In 2008, Weinreb negotiated with me for a loan modification. A proposed "Loan Modification Agreement" referenced the Guaranties. At no time during negotiations of the Loan Modification Agreement did Weinreb claim that he did not sign the Guaranties or that he is not a guarantor with regard to the loan.

*Id.* at 271. On February 12, 2010, the trial court denied Weinreb's second motion for relief from judgment. On March 12, 2010, Weinreb filed this appeal.

### Standard of Review

The burden is on the movant to establish grounds for Trial Rule 60(B) relief. *In re Paternity of P.S.S.,* 934 N.E.2d 737, 740 (Ind.2010). "A motion made under subdivision (B) of Trial Rule 60 is addressed to the 'equitable discretion' of the trial court; the grant or denial of the Trial Rule 60(B) motion 'will be disturbed only when that discretion has been abused.'" *Id.* at 740–41.

In reviewing the discretionary act of the trial court, we note that the term "discretion" implies flexibility in light of varying circumstances and the absence of a hard and fast rule or a mandatory procedure. Discretion is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. The exercise of judicial discretion must be examined in light of and confined to the issues of the particular case, and is reviewable only for an abuse thereof.

*In re Marriage of Jones,* 180 Ind.App. 496, 499, 389 N.E.2d 338, 341 (Ind.Ct.App. 1979).

### Discussion and Decision

While Weinreb is appealing from the denial of his *second* Trial Rule 60(B) motion, we believe that the background behind the trial court's denial of Weinreb's *first* Trial Rule 60(B) motion is informative and, in many ways dispositive, concerning the trial court's exercise of its discretion in denying Weinreb's second motion.

First, it is important to keep in mind that the Bank attached fully executed copies of all the loan documents, including the loan guaranties, to its complaint. Weinreb's counsel asserted only a general denial in response to the Bank's complaint. Appellant's App. pp. 120–44. Trial Rule 9.2(B) provides:

When a pleading is founded on a written instrument and the instrument or a copy thereof is included in or filed with the pleading, execution of such instrument ... shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith.

Entering an unverified general denial in response to a complaint is permissible practice under Trial Rule 8(B) and Trial Rule 11(A), the latter of which provides that pleadings need not be verified or accompanied by affidavit, *except when specifically required by rule.* The key for the purposes of the merits of Weinreb's challenges to the judgment is that Rule 9.2(B) requires that the validity of the execution of a document attached to the complaint be challenged by a verified responsive pleading or an affidavit attached to a responsive pleading. "Taken

collectively, Trial Rules 8(B), 9.2(B), and 11(A) mean that an attorney's signature on a general denial rejects the assertions in the claim, but does not constitute an oath by which the pleader denies execution of an instrument attached to the claim." *Baldwin v. Tippecanoe Land & Cattle Co.*, 912 N.E.2d 902, 905 (Ind.Ct.App.2009), *trans. denied.*

■ Because Weinreb failed to deny, under oath, that he executed the loan guaranties, execution of the guaranties was deemed established by operation of Trial Rule 9.2(B). Moreover, although the Bank bore the ultimate burden of proving execution of the guaranties, the trial court properly presumed execution of the guaranties at summary judgment because Weinreb failed to introduce in a timely manner any evidence that would support a contrary finding. *See* Trial Rule 9.2(B) & (D); *Master Copy & Reprod. Ctr., Inc. v. Copyrite, Inc.*, 750 N.E.2d 824, 830 (Ind.Ct.App. 2001).

Through his counsel, Weinreb was on notice of the Bank's specific loan and guaranty documentation at issue. However, despite the presumption that he executed the guaranties by operation of Rule 9.2, Weinreb still had the opportunity to present his forgery defense and supporting evidence thereof, and his resulting claim of fraud, to the trial court during the summary judgment proceedings by designating the affidavits later submitted with his first and second motions for relief from judgment. But Weinreb failed to respond to the Bank's motion for summary judgment within the time limits prescribed by Trial Rule 56(C). Despite notice and two distinct opportunities to challenge the Bank's documentation, Weinreb failed to raise his forgery defense at any stage of

the proceedings before final judgment was entered against him.[2]

So, when Weinreb argued in his first Trial Rule 60(B) motion that his signature on the loan guaranty was a forgery, the trial court was understandably less than sympathetic, finding that

> due diligence would have required that allegations regarding the authenticity of the "Guaranty" and "Limited Guaranty" be disclosed prior to the June 12, 2009 Motion. The Defendants have not shown that if they had used due diligence that they would not have been aware of the documents in question. In fact, the Defendants were aware of and had copies of these documents as they were attached to the complaint filed on September 12, 2008.

Appellant's App. p. 235. It is with this background that the trial court received and heard Weinreb's second Trial Rule 60(B) motion, filed nearly five months after the denial of the first.

It is well established that a 60(B) motion may not serve as a substitute for direct appeal. *See Magnuson v. Blickenstaff*, 508 N.E.2d 814, 816 (Ind.Ct.App.1987). Allowing a party to file repetitive Trial Rule 60(B) motions encourages "defaulted defendants to drag their feet and be dilatory in discovering grounds for setting aside a default judgment." *Keybank v. Davis*, 785 N.E.2d 1146, 1151 (Ind.Ct.App.2003) (citing *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 338 (Ind.1983)) ("the *Siebert Oxidermo* case"); *see also Carvey v. Ind. Nat'l Bank*, 176 Ind.App. 152, 159, 374 N.E.2d 1173, 1177 (1978) ("A party may not file repeated TR 60 motions until he either offers a meritorious ground for relief or exhausts himself and the trial court in an effort to do so."). Because Weinreb is appealing from the denial of his

---

**2.** At the May 13, 2009 summary judgment hearing, Weinreb's counsel briefly claimed that Weinreb had not signed the guaranties at issue.

second Rule 60(B) motion, he faces an extraordinary burden: *to establish that "the grounds for that additional error were unknown and unknowable to the movant at the time he made the first Rule 60(B) motion."* Siebert Oxidermo, 446 N.E.2d at 338 (citing *Carvey*, 176 Ind.App. at 159, 374 N.E.2d at 1177) (emphasis added).

In the *Siebert Oxidermo* case, Siebert Oxidermo's president forwarded Shields's complaint and summons to the company's insurance agent. However, on the date Shields was injured, Siebert Oxidermo was insured with another insurance company. There was conflicting testimony as to whether the current insurance agent agreed to handle the matter or whether he advised Siebert Oxidermo to send Shields's complaint to their former agent. However, Siebert Oxidermo's former insurance agent did not receive a copy of the complaint until after default judgment had been entered against it.

After the trial court entered a default judgment against it in the amount of $760,000, Siebert Oxidermo filed three Trial Rule 60(B) motions to set aside default judgment. The only issue raised in the first 60(B) motion was failure to appear due to excusable neglect because Oxidermo's insurance agent failed to forward Shields' complaint to the proper insurance carrier on time. The trial court denied Oxidermo's first Trial Rule 60(B) motion after observing that Oxidermo was bound by the acts of its insurance agent.

Our supreme court affirmed the trial court's denial of the first 60(B) motion and observed:

> The trial court's refusal to set the default aside was premised upon a finding that R.L. Jones and its account executive Elders could give no reason as to why the suit papers remained in their office for a month without any action

having been taken. While the testimony was conflicting on this point, and the court could have based a finding of excusable neglect or mistake upon the apparent misunderstanding between Siebert Oxidermo officials and Elder as to the latter's role in handling the matter, it did not choose to do so. More significantly, under the evidence it was not compelled to do so.

*Id.* at 340 (citing *Henline, Inc. v. Martin*, 169 Ind.App. 260, 268, 348 N.E.2d 416, 420–21 (1976) (affirming the trial court's refusal to set aside default judgment where the defendant's insurance adjuster had failed to act promptly upon receipt of legal documents while noting that under the same facts "another trial court might not have abused its discretion by granting defendants relief[.]")).

Siebert Oxidermo also argued that the trial court abused its discretion when it denied its second and third 60(B) motions and alleged that those motions raised grounds that were unknown or unknowable on the date it filed its first 60(B) motion. Our supreme court disagreed and stated:

> The additional grounds for relief alleged by Oxidermo in the second and third motions were either discoverable at the time the first Rule 60(B) motion was filed or related to an alleged substantive defense available to Oxidermo, that there was no proof Shields' injuries were caused by use of Oxidermo's defective product. Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant. Thus, the question of a lack of causation between plaintiff Shields' injuries and defendant Oxidermo's conduct would not have been a proper subject for consideration even in Oxidermo's first Rule 60(B) motion.

The issue of excessiveness of damages was not raised until the second Rule 60(B) motion was filed. We see no reason why it could not have been raised in the first Rule 60(B) motion. Rule 60(B)(2) provides the motion to set aside a default judgment may be based on "any ground for a motion to correct error...." Rule 59(A)(3) states one basis for a motion to correct error is "[e]xcessive or inadequate damages...." Thus Oxidermo could have alleged the damages awarded were excessive in the [first] Rule 60(B) motion.

*Id.* at 338. The court then concluded that the Court of Appeals had erred in remanding the case to the trial court to hold a new hearing on damages because the issue could have been raised in the first motion to set aside judgment, but it was not.

Finally, the court considered the "appealability of an issue raised by Oxidermo" not in the first Trial Rule 60(B) motion, but in Siebert Oxidermo's subsequent Trial Rule 59 motion to correct error. In the motion to correct error, Siebert Oxidermo argued that it was entitled to relief pursuant to Rule 60(B)(3) and the claims for relief were "factually related to the conduct of the attorneys in the case," a ground which is similar to that alleged by Weinreb in this case. *Id.* at 341. Specifically, "Oxidermo claimed Shields' attorney misrepresented facts regarding the service of process on Oxidermo at the May 25 hearing on his Motion for Default." *Id.* Our supreme court concluded that Siebert Oxidermo could not raise the claim for the first time in a motion to correct error because it was not raised in the preceding Rule 60(B) motion and stated:

The misconduct of Shields' attorney, if it occurred at all, was certainly discoverable by Oxidermo when the June 28 Rule 60(B) motion was filed. We do not believe Oxidermo should be permitted to

appeal the denial of the Rule 60(B) motion on grounds that were available to it when that motion was filed but were not raised until a later time when the Rule 59 motion was filed. To do so would run counter to the *Carvey* case prohibition against the repetitive filing of Rule 60(B) motions. The trial court ruled properly in overruling the first Rule 59 motion insofar as it alleged entitlement to relief on Rule 60(B)(3) grounds due to alleged misconduct on the part of either attorney.

*Id.* at 342. For all of these reasons, the Supreme Court affirmed the trial court in all respects, including its award of damages in the amount of $760,000 as a part of the default judgment. *Id.*

Five years earlier, in *Carvey v. Indiana National Bank,* 176 Ind.App. 152, 374 N.E.2d 1173 (1978), our court reached the opposite result and reversed the denial of defendant Carvey's second motion for default judgment. In that case,

Carvey, along with seven others, guaranteed a note executed by a company which later became bankrupt. The holder of the note, Indiana National Bank, through its attorneys Hulett, Morgan, and McClarnon, negotiated with Carvey concerning his liability and, during the negotiations, indicated both Carvey would be liable for only his pro rata share of the obligation and, further, that a suit on the note to be filed later in which Carvey would be a named defendant was only for the purpose of pursuing the uncooperative guarantors. After Indiana National filed suit and Carvey was joined with the other guarantors, Indiana National moved for default judgment against Carvey. Carvey then filed his late answer without leave of court, spoke with attorney Morgan and was assured he was no longer in default. Relying on Morgan, Carvey did not ap-

pear at the default hearing but attorney McClarnon did, and obtained a default judgment against Carvey for the *full* amount of the note plus $9,000 in attorneys fees. Attorney Morgan then informed Carvey that the default judgment would not have been obtained if attorney McClarnon had known the true facts and, apparently, this misrepresentation lured Carvey into a perfunctory T.R. 60(B) motion (claiming only that he had filed an answer and was not in default) under the justified belief his motion would not be contested by Indiana National as the motion was merely to correct an inadvertent default entry. But, Indiana National did contest the motion and it was denied by the trial court perhaps under the theory that merely filing a tardy answer does not relieve a party from his default position. Carvey then filed his second T.R. 60(B) motion setting forth in detail the negotiations with Indiana National Bank and his reliances on the bank's alleged misstatements. The trial court denied this second motion although the facts alleged with respect to the negotiations with and representations of the bank's counsel were not refuted. On appeal, this court found an abuse of discretion by the trial court in failing to set aside the default.

*Fulton v. Van Slyke,* 447 N.E.2d 628, 633–34 (Ind.Ct.App.1983) (discussing *Carvey,* 176 Ind.App. 152, 374 N.E.2d 1173). Specifically, the *Carvey* court reversed the denial of the defendant's second motion to set aside default judgment because Carvey had relied on the plaintiffs representations and he "did not become aware of the full implications of those representations until after his first TR 60(B) motion had been filed." 176 Ind.App. at 159, 374 N.E.2d at 1177.

Weinreb argues that, like the defendant in *Carvey,* his "first opportunity to ade-quately address the forged Guaranties issue came in his second Rule 60(B) motion" because his prior counsel failed to timely respond to the Bank's motion for summary judgment. Appellant's Br. at 6. Weinreb claims that "[i]t was only in the second Rule 60(B) motion, prepared by new counsel for and on behalf of Weinreb, that relief was sought on the grounds of excusable neglect, fraud, and the Trial Court's broad equitable powers given the earlier attorney's malfeasance." Reply Br. at 2. Finally, Weinreb observes that his former counsel "defrauded him into believing that his former counsel was properly presenting his forgery defense" to the trial court, and the court erred in "imputing Weinreb's former counsel's action to him." *Id.* at 3.

*Carvey* is quite distinguishable from the facts before us. Carvey was granted relief because he relied on *the direct misrepresentations of an adverse party and of its attorney to Carvey, personally at several procedural junctures in the case.* Those are not the circumstances presented in this appeal. The facts of this case are analogous to those in the *Siebert Oxidermo* case. As with Siebert Oxidermo's insurance agent's failure to forward the complaint to the proper insurance carrier, here, Weinreb's prior counsel failed to present his forgery defense.

Also contained in his second Trial Rule 60(B) motion are more general, equitable claims made under subsection (8) of the rule. Most of these claims concern the conduct of Weinreb's first attorney. Weinreb also argues that equity demands that he be relieved of a judgment of over $2,000,000 entered against him based on loan guaranties that he alleges he never signed.

 With regard to his first attorney's conduct, Weinreb has never argued

that his prior counsel's neglect was "excusable," only that the neglect should not be attributable to him. This argument runs counter to our longstanding rule that a client is bound by his attorney's actions.

> An attorney can bind a client to a default judgment entered due to an attorney's neglect. *See, e.g., International Vacuum, Inc. v. Owens,* 439 N.E.2d 188 (Ind.Ct.App.1982) (no abuse of discretion in refusing to vacate default judgment against the client where attorney's failure to keep apprised of court proceedings resulted in the attorney's absence at pre-trial hearing, hearing on a motion for a default judgment, and hearing on damages). In these respects, a client is bound by the skill, bad luck, or incompetence of the agent it chooses. *In the absence of fraud by the attorney,* the client is bound by the action of the attorney, even though the attorney is guilty of gross negligence. *Mirka v. Fairfield of Am., Inc.,* 627 N.E.2d 449, 450 n. 1 (Ind.Ct.App.1994). *See also Parker v. State,* 676 N.E.2d 1083, 1086 (Ind.Ct. App.1997) (the general rule is that a client is bound by his attorney's actions in civil proceedings).

*Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299, 1302 n. 2 (Ind.1998) (emphasis added).

In arguing that he was defrauded by his prior counsel's failure to respond to the motion for summary judgment and to keep him informed of the trial court's rulings, Weinreb ignores the fact that "[r]efusal to relieve a party from a judgment based upon the action of the party's attorney has a long history in Indiana common law." *Morequity, Inc. v. Keybank, N.A.,* 773 N.E.2d 308, 314 (Ind.Ct.App.2002), *trans. denied* (citing *Kreite v. Kreite,* 93 Ind. 583, 585 (1884)) ("The attorney's act was appellant's act, and if as between them the attorney had no such authority, and appel-

lant was injured, his remedy is against the attorney, and not to be relieved from the judgment."). Siebert Oxidermo was bound by its insurance agent's negligence, and Weinreb is similarly bound by his prior counsel's negligence in failing to present his forgery defense. *See Mirka,* 627 N.E.2d at 450 n. 1; *Houchins v. Kittle's Home Furnishings,* 589 N.E.2d 1190, 1195 (Ind.Ct.App.1992) (quoting *Wise v. Curdes,* 219 Ind. 606, 613, 40 N.E.2d 122, 125 (1942)) ("Ordinarily, the knowledge of an attorney gained while acting for a client and within the scope of his employment is deemed to be the knowledge of the client to whom it is presumed to have been imparted.").

▮▮▮ As to Weinreb's final, general, equitable argument, a trial court may act within its discretion under Trial Rule 60(B)(8) to set aside a judgment upon a showing of exceptional circumstances justifying extraordinary relief. *See Brimhall v. Brewster,* 864 N.E.2d 1148, 1153 (Ind.Ct. App.2007), *trans. denied.*

> [Trial Rule] 60(B)(8) is an omnibus provision which gives broad equitable power to the trial court in the exercise of its discretion and imposes a time limit based only on reasonableness. Nevertheless, under T.R. 60(B)(8), the party seeking relief from the judgment must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect. Rather some extraordinary circumstances must be demonstrated affirmatively. This circumstance must be other than those circumstances enumerated in the preceding subsections of T.R. 60(B).

*Id.* (quoting *Ind. Ins. Co. v. Ins. Co. of N. Am.,* 734 N.E.2d 276, 279–80 (Ind.Ct.App. 2000), *trans. denied* (internal quotation omitted)).

Although a claim of *newly discovered* forgery might justify relief from judgment

under a second Trial Rule 60(B)(8) motion, it is worth remembering the finding of the trial court in its denial of Weinreb's *first* Trial Rule 60(B) motion:

> due diligence would have required that allegations regarding the authenticity of the "Guaranty" and "Limited Guaranty" be disclosed prior to the June 12, 2009 Motion. The Defendants have not shown that if they had used due diligence that they would not have been aware of the documents in question. In fact, the Defendants were aware of and had copies of these documents as they were attached to the complaint filed on September 12, 2008.

Appellant's App. p. 235.

Moreover, the Bank (and substituted plaintiff TR Developers) presented evidence to the trial court in its response to Weinreb's second Rule 60(B) motion that casts serious doubt on Weinreb's claim that his signature was forged. Specifically, TR Developers submitted:

1) Chief Risk Officer Hiltz's affidavit stating that the loan was conditioned on receiving Weinreb's guaranty, Weinreb provided his personal financial information to the Bank, and Weinreb did not claim his signature on the guaranties was forged during the 2008 negotiations for a loan modification;

2) a copy of the financing proposal requiring a loan guaranty from the principals of WK Timber Ridge; and

3) a copy of Weinreb's certification to the law firm of Backer & Backer, WK Timber Ridge's counsel, stating that Weinreb "has no actual knowledge of any misrepresentation, error, fraud or deceit by any parties to the loan documents . . . executed by the Company or the Guaranties . . . executed by the Guarantor in favor of [the Bank] . . . in connection with a new

mortgage loan from Lender to the Company in the principal amount of" $4,000,000.00.

Appellant's App. pp. 270–79.

Finally, TR Developers submitted the letter of Stephen Backer indicating that counsel for WK Timber Ridge had reviewed all loan documents, including the guaranties, and further stating:

> [t]he execution and delivery by Guarantor of the Guaranties and the Environmental Indemnity and the performance of Guarantor's obligations under the Guaranties and the Environmental Indemnity have been duly authorized by all requisite action of Guarantor and the Guaranties and the Environmental Indemnity have been duly executed and delivered by Guarantor.

Appellant's App. p. 282. Attorney Backer further opined that "[t]he Loan Documents are the legal, valid and binding obligations of Borrower and Guarantor, respectively, enforceable against Borrower and Guarantor, respectively, in accordance with their respective terms[.]" *Id.*

In response, Weinreb submitted a supplemental affidavit again denying execution of the certification and guaranties, and also stating that he was "unaware" of the Bank's financing proposal until after a default was declared on the loan. *Id.* at 305. Weinreb stated that he had no knowledge of Backer's letter, did not provide any personal financial information to the Bank, and that the forged guaranties were never mentioned during the 2008 negotiations concerning a loan modification. *Id.* at 306. Although Weinreb also submitted the affidavit of a handwriting expert in support of his second Rule 60(B) motion, the handwriting expert compared only the signatures on the guaranties "with documents *purported* to contain authentic signatures

of Steve Weinreb[.]" *Id.* at 256 (emphasis added).

With this equivocal evidence before it, distilling essentially to a swearing contest that should have been raised long before, the trial court was well within its discretion to reject Weinreb's equitable demands that the trial court set aside the judgment entered against him under Trial Rule 60(B)(8). Weinreb's second Trial Rule 60(B) motion did not present any grounds that would entitle him to relief from judgment that were unknown or unknowable at the time he filed his first such motion.

 *Carvey,* as quoted in the *Siebert Oxidermo* case said it best: "A party may not file repeated TR 60 motions until he either offers a meritorious ground for relief or exhausts himself and the trial court in an effort to do so." *Siebert Oxidermo,* 446 N.E.2d at 338 (quoting *Carvey,* 176 Ind.App. at 159, 374 N.E.2d at 1177). Furthermore, our review of a trial court's decision on a 60(B) motion to set aside judgment is limited and will only "be overturned if it is clearly against the logic and effect of the facts or the reasonable deductions to be drawn therefrom." *International Vacuum, Inc. v. Owens,* 449 N.E.2d 599, 600 (Ind.1983). *See also Principal Life Ins. Co. v. Needler,* 816 N.E.2d 499, 502 (Ind.Ct.App.2004) ("Judicial discretion is a judge's privilege to decide and act in accordance with what is fair and equitable within the confines of justice, in light of and confined to the facts and circumstances of a particular case."). Under the facts and circumstances before us, we conclude that the trial court properly denied both of Weinreb's Trial Rule 60(B) motions at issue.

## II. Attorney Fees

 Finally, TR Developers argues that it is entitled to appellate attorney fees because Weinreb is obligated to pay all costs of collection including attorney fees under the guaranty. Weinreb did not respond to TR Developers claim for attorney fees in his Reply Brief.

The guaranty provides that "the Guaranteed Obligations, and liability of the Guarantor hereunder, shall in no event exceed the sum of (A) Fifty (50%) percent of the outstanding principal balance of the Loan plus (B) all accrued interest . . ., late payment charges and all costs of collection (including, without limitation, attorney's fees). Appellant's App. p. 134. The trial court's May 13, 2009 order granting summary judgment in favor of the Bank provides: "To the extent additional fees and expense are incurred [the Bank] may petition the Court for additional judgment amounts." *Id.* at 217.

As TR Developers notes in its brief, the Bank assigned all of its rights in the judgment to TR Developers. *See* Appellee's Supp. App. p. 3. Accordingly, we remand this case to the trial court for a determination of whether TR Developers is entitled to appellate attorney fees. *See Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 151 (Ind.Ct.App.2004) (stating that "appellate attorneys' fees may be appropriately awarded if a contractual provision calls for them and the party requesting the fees prevails").

## Conclusion

In contravention of well-established precedent disfavoring the repetitive filing of Trial Rule 60(B) motions, Weinreb filed two such motions in this case, and did not appeal the trial court's denial of the first. The trial court did not abuse its discretion when it denied Weinreb's second Trial Rule 60(B) motion, because that motion did not present any grounds that might entitle him to relief from judgment that were unknown or unknowable at the time he filed his first 60(B) motion. We re-

mand this case to the trial court for a determination of whether TR Developers is entitled to an award of appellate attorney fees.

Affirmed and remanded for proceedings consistent with this opinion.

BAKER, J., and NAJAM, J., concur.